No. 90,081

In the Matter of DOUGLAS S. WRIGHT, *Respondent*.

(76 P.3d 1018)

Opinion filed September 19, 2003.

*Alexander M. Walczak,* deputy disciplinary administrator, argued the cause and was on the brief for petitioner.

*Gregory A. Lee,* of Davis, Unrein, McCallister, Biggs & Head, LLP, of Topeka, argued the cause and was on the brief for respondent, and *Douglas S. Wright,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the Disciplinary Administrator against Respondent Douglas S. Wright, Kansas Attorney Registration No. 08066, whose last registration address with the Clerk of the Appellate Courts of Kansas is Topeka, Kansas.

The formal complaint filed against the Respondent alleged multiple violations of KRPC 1.15 (2002 Kan. Ct. R. Annot. 384) (safekeeping property); KRPC 8.1 (2002 Kan. Ct. R. Annot. 445) (bar admission and disciplinary matters); KRPC 8.4(a), (b), (c), (d), and (g) (2002 Kan. Ct. R. Annot. 449) (misconduct); and Kansas Supreme Court Rule 207(b) (2002 Kan. Ct. R. Annot. 247). A panel of the Kansas Board for Discipline of Attorneys conducted a formal hearing on November 25, 2002, and later prepared a report containing its findings of fact, conclusions of law, and recommendations for discipline. The Respondent appeared before the panel and later filed several exceptions to its report. We adopt the panel's findings and conclusions as modified, but a majority of the court rejects the panel's recommendation of suspension and instead orders disbarment.

## PANEL'S FINDINGS OF FACTS

The hearing panel found, by clear and convincing evidence, certain facts which are summarized as follows:

### Vera Johnson

Vera Johnson, the Respondent's paternal great aunt, is currently 95 years of age. Since the early 1980s, Mrs. Johnson has resided at Brewster Place Retirement Center, a licensed nursing facility, lo-

cated in Topeka. Mrs. Johnson is disabled and requires 24-hour-a-day nursing care. On April 11, 1994, she executed a power of attorney which authorized the Respondent to handle her financial affairs. The Respondent agreed to serve his great aunt without payment. At that time, Mrs. Johnson was capable of handling her financial affairs. In 1997, however, she became disabled and was no longer able to accept those responsibilities. The Respondent then began to pay Mrs. Johnson's bills and handle her checking account.

Beginning in 1999 and continuing until November 2002, the Respondent failed to timely pay Mrs. Johnson's bill at Brewster Place, although she became eligible for Medicaid during the summer of 2002 and ceased accruing additional charges at that time. Because the Respondent failed to timely pay her bill, she faced removal from her Brewster Place residence. On December 13, 2001, after trying to get the Respondent to pay Mrs. Johnson's bill continually for over 2 years, David Beck, Executive Director of Brewster Place, wrote a letter of complaint to the Disciplinary Administrator. Thereafter, a disciplinary investigation ensued.

Topeka attorney John J. Ambrosio was appointed to investigate the complaint. On February 7, 2002, Mr. Ambrosio briefly interviewed the Respondent. Because the Respondent made several statements that troubled him, Mr. Ambrosio contacted the Disciplinary Administrator, Stanton A. Hazlett, and requested an audit of Mrs. Johnson's checking account. On February 20, 2002, Mr. Hazlett assigned Robert R. Straub to perform the audit. On March 1, 2002, Mr. Straub sent the Respondent a letter notifying him of the audit.

During the course of Mr. Straub's investigation, he met with the Respondent on three occasions. On March 19, 2002, during the first meeting, the Respondent told Mr. Straub that he had borrowed money from Mrs. Johnson's checking account and had paid it back. The Respondent also told Mr. Straub that he maintained records for only 3 years. He provided Mr. Straub with a transaction report for Mrs. Johnson's checking account beginning January 4, 1999. Based upon the Respondent's statements, Mr. Straub believed that the Respondent did not have any records of Mrs. John-

son's account prior to January 1, 1999. Mr. Straub then asked the Respondent to provide a schedule of the loans and the payments made on the loans.

On April 12, 2002, Mr. Straub and the Respondent met for the second time. During this meeting, the Respondent told Mr. Straub that he had borrowed from Mrs. Johnson's checking account beginning in 1999 and provided Mr. Straub with a short list of withdrawals and deposits for her account from 1999 forward. After reviewing this list, Mr. Straub asked the Respondent why he paid Mrs. Johnson $13,000 on February 10, 1999, and $16,000 on February 18, 1999, when he had only borrowed $1,250 from her by that date. Based upon the list, Mr. Straub concluded that the Respondent must have borrowed money from Mrs. Johnson prior to 1999. Consequently, Mr. Straub requested that the Respondent provide records from 1998, and the Respondent agreed.

On May 10, 2002, Mr. Straub and the Respondent met for the third time. During this meeting, the Respondent provided Mr. Straub with a transaction report beginning January 2, 1998, and a list of checks that the Respondent had written for his personal benefit on Mrs. Johnson's checking account. The list included the payments that the Respondent had made to Mrs. Johnson. The documents reveal that on the following dates and in the following amounts, the Respondent took money from Mrs. Johnson's checking account without authorization and used it for his personal expenses and bills:

| | Date | Check No. | Amount | Total Amount |
|---|---|---|---|---|
| 1. | 01/13/1998 | 792 | 1,500.00 | 1,500.00 |
| 2. | 01/15/1998 | 793 | 3,000.00 | 4,500.00 |
| 3. | 01/24/1998 | 794 | 1,000.00 | 5,500.00 |
| 4. | 01/30/1998 | 795 | 5,000.00 | 10,500.00 |
| 5. | 02/06/1998 | 796 | 1,000.00 | 11,500.00 |
| 6. | 03/03/1998 | 797 | 1,100.00 | 12,600.00 |
| 7. | 03/13/1998 | 798 | 2,500.00 | 15,100.00 |
| 8. | 03/13/1998 | 799 | 2,500.00 | 17,600.00 |
| 7. | 03/23/1998 | 800 | 11,500.00 | 29,100.00 |
| 8. | 04/16/1998 | 1004 | 2,000.00 | 31,100.00 |
| 9. | 04/17/1998 | 1006 | 500.00 | 31,600.00 |
| 10. | 04/25/1998 | 1007 | 500.00 | 32,100.00 |
| 13. | 05/01/1998 | 1008 | 1,000.00 | 33,100.00 |

| | | | |
|---|---|---|---|
| 14. 05/16/1998 | 1010 | 2,000.00 | 35,100.00 |
| 15. 05/22/1998 | 1011 | 1,000.00 | 36,100.00 |
| 16. 05/30/1998 | 1014 | 2,000.00 | 38,100.00 |
| 17. 05/30/1998 | 1015 | 2,000.00 | 40,100.00 |
| 18. 06/06/1998 | 1018 | 1,000.00 | 41,100.00 |
| 19. 06/17/1998 | 1019 | 2,500.00 | 43,600.00 |
| 20. 06/23/1998 | 1020 | 500.00 | 44,100.00 |
| 21. 06/23/1998 | 1021 | 1,000.00 | 45,100.00 |
| 22. 07/09/1998 | 1022 | 250.00 | 45,350.00 |
| 23. 07/09/1998 | 1024 | 150.00 | 45,500.00 |
| 24. 07/09/1998 | 1025 | 500.00 | 46,000.00 |
| 25. 08/05/1998 | 1028 | 600.00 | 46,600.00 |
| 26. 08/15/1998 | 1029 | 1,500.00 | 48,100.00 |
| 27. 08/15/1998 | 1030 | 1,500.00 | 49,600.00 |
| 28. 09/30/1998 | 1031 | 2,000.00 | 51,600.00 |
| 29. 09/30/1998 | 1032 | 500.00 | 52,100.00 |
| 30. 12/02/1998 | 1037 | 500.00 | 52,600.00 |
| 31. 12/22/1998 | 1040 | 2,000.00 | 54,600.00 |
| 32. 12/22/1998 | 1041 | 1,000.00 | 55,600.00 |
| 33. 12/22/1998 | 1042 | 1,000.00 | 56,600.00 |
| 34. 01/16/1999 | 1043 | 750.00 | 57,350.00 |
| 35. 02/01/1999 | 1044 | 1,000.00 | 58,350.00 |
| 36. 02/01/1999 | 1045 | 500.00 | 58,850.00 |
| 37. 08/31/1999 | 1054 | 23,000.00 | 81,850.00 |
| 38. 04/22/2000 | 1064 | 1,000.00 | 82,850.00 |
| 39. 12/14/2000 | 1068 | 1,000.00 | 83,850.00 |
| 40. 12/14/2000 | 1069 | 500.00 | 84,350.00 |
| 41. 02/23/2001 | 1062 | 100.00 | 84,450.00 |
| 42. 02/09/2002 | 1077 | 900.00 | 85,350.00 |
| 43. 02/20/2002 | 1078 | 900.00 | 86,250.00 |

Even though the Respondent did not perform any legal services for Mrs. Johnson and agreed to handle her financial affairs without payment, the memo section of 17 of the 43 checks indicated "annual payment," "fee," or "legal fee." The payee for each of these 17 checks was the Respondent's professional corporation, Douglas S. Wright, P.A. At the hearing in this matter, the Respondent testified that the reason he included "annual payment," "fee," and "legal fee" in the memo section was for accounting purposes because each of these checks was made payable to his professional corporation. The Respondent was unable to explain, however, what accounting purpose was served by including those words. Addi-

tionally, the Respondent admitted that because he was not owed an annual payment, fee, or a legal fee, the statements in the memo lines were false.

From time-to-time, the Respondent has repaid portions of the money taken. As of the date that the disciplinary investigation commenced, the repayments made by the Respondent were as follows:

| Date | Payments | Total Payments |
|---|---|---|
| 1. 03/10/1998 | 11,244.23 | 11,244.23 |
| 2. 05/21/1998 | 10,000.00 | 21,244.23 |
| 3. 10/20/1998 | 7,001.14 | 28,245.37 |
| 4. 02/10/1999 | 13,000.00 | 41,245.37 |
| 5. 02/10/1999 | 16,000.00 | 57,245.37 |

At the time the formal complaint was filed, the Respondent owed Mrs. Johnson $27,204.63. At the subsequent disciplinary hearing he testified that in November 2002, he paid the amount owing into her account. However, Respondent has not paid any interest on the $86,250 principal. He also testified that, after depositing funds into Mrs. Johnson's checking account, he finally paid her outstanding balance at Brewster Place. Representatives of Brewster Place confirmed the account had been brought current.

The Respondent testified that at the time he had taken Mrs. Johnson's money, he had intended to pay it back. Based upon the Respondent's testimony and his repayments prior to the commencement of the disciplinary investigations, the hearing panel found that the Respondent did intend to repay the money. Additionally, the Respondent testified that he had taken the money because he was having financial difficulties and needed the money to continue to meet his personal obligations. Moreover, he testified that he continued to hold Mrs. Johnson's power of attorney and remained in charge of her financial matters.

*Topeka Lawyers Club*

In 2001, the Respondent served as Secretary/Treasurer for a social club known as the Topeka Lawyers Club. In that capacity, he was responsible for making the deposits, paying the bills, and balancing the checkbook. From September 2001, through Decem-

ber 2001, the Respondent wrote four checks to himself, drawn on the Topeka Lawyers Club checking account, in the total amount of $3,000. The Topeka Lawyers Club did not owe him any money, nor did he have the authority of the club to write himself the checks.

In an attempt to repay a portion of the money Respondent had taken, on February 8, 2002, he wrote a check to the Topeka Lawyers Club in the amount of $1,500. However, because the Respondent did not have sufficient funds in his account to cover the check, the check was returned. The next month, on March 2, he wrote a check to the club in the amount of $2,000. Later that month, on March 13, Thomas D. Haney, the club president, reviewed the monthly statement of the club's checking account. Included in the bank envelope with the statement was the Respondent's original $1,500 check that had been returned. Mr. Haney then telephoned the Respondent and scheduled a meeting regarding the club's checking account. Initially, the Respondent told Mr. Haney that he had paid the bill incurred at the club Christmas party because, at the time the bill was due, the club did not have sufficient funds to pay the bill.

On March 15, 2002, Mr. Haney and the Respondent met, and Respondent admitted that he made unauthorized, no-interest loans to himself from the club account to meet his personal financial obligations. At that time, the Respondent provided Mr. Haney with a check in the amount of $1,000 made payable to the club. Mr. Haney then conducted a thorough audit of the club's checking account and discovered that the Respondent owed an additional $587 in fees that he had not paid for himself and for cash paid that was not deposited. One week later, on March 22, the Respondent tendered his resignation from the club and provided Mr. Haney with a check in the amount of $587. Although he did not admit that he owed this additional money, he paid it to avoid further involvement.

The Respondent testified at the disciplinary hearing that, at the time he had taken this money, he had intended to pay it back. Based upon the Respondent's testimony and his repayments prior to Mr. Haney learning of his "loans," the hearing panel found that

the Respondent did intend to repay the money. Additionally, he testified that he had taken the money from his club because he needed it to meet his personal obligations.

## PANEL'S CONCLUSIONS OF LAW

A. Stipulations: The Respondent stipulated that he violated KRPC 1.15, KRPC 8.4(a), KRPC 8.4(c), KRPC 8.4(d), and KRPC 8.4(g).

*KRPC 1.15(a):*

This rule provides:

"A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer for a period of five years after termination of the representation."

Consistent with Respondent's stipulation, the panel concluded that he failed to safeguard Mrs. Johnson's funds, failed to safeguard the funds of the Topeka Lawyers Club, and failed to maintain complete records of Mrs. Johnson's account, which violated KRPC 1.15(a).

*KRPC 8.4:*

This rule provides, in pertinent part, as follows:

"It is professional misconduct for a lawyer to:

"(a) Violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;

. . . .

"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

"(d) engage in conduct that is prejudicial to the administration of justice;

. . . .

"(g) engage in any other conduct that adversely reflects on the lawyer's fitness to practice law."

Consistent with Respondent's stipulation, the panel concluded that he violated KRPC 8.4(a), (c), (d), and (g), as detailed below:

a. The Respondent violated KRPC 8.4(a) by violating KRPC 1.15(a), KRPC 8.1(b), KRPC 8.4(c), KRPC 8.4(d), and KRPC 8.4(g).

b. In violation of KRPC 8.4(c), the Respondent "engage[d] in conduct involving dishonesty, fraud, deceit or misrepresentation" when he took money that did not belong to him from Mrs. Johnson and the Topeka Lawyers Club; when he included the false notations of annual payment, fee, and legal fee in the memo section of 17 of the 43 checks drawn on Mrs. Johnson's account; and when he intentionally misled Mr. Straub during the disciplinary investigation.

c. In violation of KRPC 8.4(d), the Respondent engaged in conduct that was "prejudicial to the administration of justice" when he took money that did not belong to him and when he failed to cooperate in the disciplinary investigation.

d. In violation of KRPC 8.4(g), the Respondent engaged in conduct that reflects adversely on his ability to practice law when he took money that did not belong to him.

B. No Stipulation: The Respondent did not stipulate to the Disciplinary Administrator's allegations that he violated KRPC 8.1 (2002 Kan. Ct. R. Annot. 445) (bar admission and disciplinary matters) and Kansas Supreme Court Rule 207(b).

*KRPC 8.1(a) and (b)*

This rule provides, in pertinent part, as follows:

"An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

"(a) knowingly make a false statement of material fact; or

"(b) . . . knowingly fail to respond to a lawful demand for information from [a] disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6."

*Kansas Supreme Court Rule 207(b):*

This rule in turn provides:

"It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters."

The Respondent asserts that he fully cooperated in the disciplinary investigation. However, the panel concluded that when he met with Mr. Straub on March 19, 2002, he intentionally misled

Mr. Straub by stating that he maintained records only back to January 1, 1999. Additionally, when he met with Mr. Straub on April 12, 2002, he falsely informed Mr. Straub that he did not take any money from Mrs. Johnson in 1998. Moreover, at the disciplinary hearing he admitted that he did not volunteer information to Mr. Straub that he knew to be relevant and helpful to Mr. Straub's investigation and that would correct Mr. Staub's misapprehension that was known to the Respondent. The panel therefore concluded that by intentionally misleading Mr. Straub and by not providing information to correct his misapprehension that was known by the Respondent during the disciplinary investigation, the Respondent violated KRPC 8.1(b) and Kansas Supreme Court Rule 207(b). The panel, however, did not conclude that the Respondent violated KRPC 8.1(a).

C. Not addressed: The panel did not address the Disciplinary Administrator's allegation that Respondent also violated KRPC 8.4(b), which states it is professional misconduct for a lawyer to:

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

### ABA Standards

In making its recommendation for discipline, the panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter Standards). On the subject of Duty Violated and Mental State, the panel found Respondent intentionally violated his fiduciary duty to Mrs. Johnson to protect her assets, his duty to the public to maintain personal integrity, and his duty to the legal profession. On the subject of Injury, Mrs. Johnson and the Topeka Lawyers Club suffered actual injury as a result of the Respondent's misconduct. However, the panel observed that Mrs. Johnson was never evicted from Brewster Place and that the Respondent has paid back a substantial portion of the money taken from her and all of the money taken from the Topeka Lawyers Club.

On the subject of Aggravating Factors, several were present. In regard to the factor of Dishonest or Selfish Motive, the Respondent engaged in dishonest conduct when he included annual payment,

fee, and legal fee in the memo section of 17 of the 43 checks. The Respondent also engaged in dishonest conduct in his dealings with Mr. Straub during the course of the disciplinary investigation. Furthermore, the Respondent engaged in selfish conduct when he took money that did not belong to him from Mrs. Johnson and the Topeka Lawyers Club and used it to meet his personal obligations. The panel therefore concluded that the Respondent's misconduct was motivated by dishonesty and selfishness. Regarding the aggravating factor of Pattern of Misconduct, during a 4-year period of time the Respondent wrote 43 checks on Mrs. Johnson's account and 4 checks on the Topeka Lawyers Club account without authorization. As such the panel concluded that he engaged in a pattern of misconduct.

Based on the factor of Multiple Offenses, the panel concluded that the Respondent violated KRPC 1.15, KRPC 8.1(b), KRPC 8.4(a), (c), (d), and (g), and Kansas Supreme Court Rule 207(b). Concerning the factor of Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process, the panel concluded the Respondent intentionally misled Mr. Straub during the course of the disciplinary investigation. Because of this, and because Respondent also failed to disclose information necessary to correct a known misapprehension of Mr. Straub, the hearing panel concluded that the Respondent obstructed the proceeding.

Concerning the factor of Vulnerability of Victim, the panel found Mrs. Johnson is a 95-year-old disabled individual living in a nursing facility. Because of the Respondent's misconduct, Mrs. Johnson's continued residency in Brewster Place was jeopardized. The panel concluded that she was vulnerable to the Respondent's misconduct. On the factor of Substantial Experience in the Practice of Law, the Respondent was admitted to the practice of law in the state of Kansas in 1973. At the time he committed the misconduct, he had been practicing law for 25 years. As such, the hearing panel concluded that the Respondent had substantial experience in the practice of law.

On the subject of Mitigating Circumstances, several were present. For the mitigating factor of Absence of Prior Disciplinary Rec-

ord, the Respondent has not previously been disciplined. Regarding the factor of Remorse, the Respondent expressed genuine remorse at the hearing for engaging in the misconduct. Concerning the factor of Timely Good Faith Effort to Make Restitution or to Rectify the Consequences of the Misconduct, the panel found that the disciplinary complaint was lodged by Brewster Place on December 13, 2001. Before that time, the Respondent had repaid Mrs. Johnson $57,245.37. Because he had paid back a substantial portion of the money taken from her prior to the time when the complaint was filed, the panel concluded that he made a timely good faith effort to make restitution. Regarding the factor of Present and Past Attitude of the Respondent as Shown by His Cooperation During the Hearing and His Full and Free Acknowledgment of the Transgressions, the panel found that during the proceedings, the Respondent stipulated that he violated KRPC 1.15 and KRPC 8.4(a), (c), (d), and (g). Additionally, during the hearing on this matter, he acknowledged that he had taken the money to meet his personal financial obligations.

The panel concluded that the factor of Previous Good Character and Reputation was the most important factor in this case. The Respondent established that he is a competent and productive member of the bar of Topeka. He provided letters of support from three attorneys. Additionally, a well-respected psychiatrist, Walter Menninger, M.D., and six well-respected attorneys testified in the Respondent's behalf. Dr. Menninger and each of the attorneys had been made aware of the allegations contained in the formal complaint. All of the attorneys testified that, when they first learned of the allegations, they were shocked because they did not believe that it was the type of behavior in which the Respondent would engage. In addition, Dr. Menninger testified that the Respondent clearly understood the difficulties that he had created for himself and that he was remorseful for engaging in the misconduct. Furthermore, Dr. Menninger testified that with the proper safeguards in place, it is unlikely that the misconduct would recur.

In addition to the above-cited factors, the panel thoroughly examined and considered Standards 4.11, 4.12, 5.11(b), 7.1, and 7.2.

Standard 4.11 provides: "Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client."

Standard 4.12 provides: "Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client."

Standard 5.11(b) provides: "Disbarment is generally appropriate when: . . . a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

Standard 7.1 provides:

"Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system."

Standard 7.2 provides:

"Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system."

The panel acknowledged that the ABA Standards indicate that the Respondent should be suspended or disbarred from the practice of law. However, the panel also found that the Respondent had demonstrated that he is a valuable member of the Topeka Bar and that the misconduct was out of character for him. It concluded such misconduct was unlikely to occur again. The large number of Topeka attorneys who were willing to vouch for the Respondent's ability to practice law as well as his character, even in light of knowledge of the instant case, "duly impressed" the panel. Because the Respondent's support system appeared to be appropriate, the panel unanimously recommended that Respondent be suspended from the practice of law for a period of 3 years. It further recommended that the imposition of the discipline be suspended and that the Respondent be placed on probation for a period of 5 years, subject to certain terms and conditions. As discussed later in the opinion, a majority of the court disagrees and does not adopt the

recommended discipline. The recitation of all the panel's recommended terms and conditions of probation is therefore moot.

The panel also concluded that the Respondent owes Mrs. Johnson the principal amount of $2,609.47 and an additional $93 to reimburse her for overdraft charges that she incurred as a direct result of his taking money from her account. Finally, the panel concluded he owes interest on the money taken, with simple interest calculated at a rate of 10% up until the date of the hearing totaling $10,928.70. It recommended that the restitution payment be made through the Disciplinary Administrator's office and that the total amount of restitution, $13,628.17, be paid by the Respondent within 90 days after this opinion is filed. The panel also concluded that in order to continue to be eligible for Medicaid, Mrs. Johnson's account must not exceed $2,000 at the end of the month. Accordingly, the Respondent was to work with the Kansas Department of Social and Rehabilitation Services to ensure that restitution is either used on exempt items for Mrs. Johnson or paid to the State prior to the end of the month in which it is paid in order to assure that Mrs. Johnson's Medicaid eligibility is not disrupted.

## EXCEPTIONS TO THE PANEL'S REPORT

As mentioned, pursuant to Supreme Court Rule 212(c) (2002 Kan. Ct. R. Annot. 266), Respondent took exception to selected findings of the panel. He claims the panel erred in concluding he misled investigators and in finding he violated KRPC 8.1(b) (2002 Kan. Ct. R. Annot. 445) (bar admission and disciplinary matters) and Kansas Supreme Court Rule 207(b) (2002 Kan. Ct. R. Annot. 247). He argues that he fully cooperated with the Disciplinary Administrator's appointed auditor, Mr. Straub, and provided him all information which he requested.

The Disciplinary Administrator in turn claims the panel erred by failing to address the alleged violations of KRPC 8.4(b).

## DISCUSSION

Our standard of review of findings of fact and conclusions of law in matters of attorney discipline was stated in *In the Matter of Boone*, 275 Kan. 560, 566, 66 P.3d 896 (2003):

"In disciplinary matters, this court must examine the evidence and determine the judgment to be entered. In doing so, the findings of fact, conclusions of law, and recommendations made by the disciplinary panel are advisory only, but will be given the same dignity as a special verdict by a jury or the findings of a trial court. The disciplinary panel's report will be adopted where amply sustained by the evidence, but not where it is against the clear weight of the evidence or where the evidence consisted of sharply conflicting testimony. [Citations omitted.] We apply these rules in considering the evidence, the findings of the disciplinary panel, and the arguments of the parties in making our determination of whether violations of KRPC exist, and, if they do, deciding upon the appropriate discipline to be imposed. [Citation omitted.]"

To warrant a finding of misconduct, charges must be established by clear and convincing evidence. Supreme Court Rule 211(f) (2002 Kan. Ct. R. Annot. 260); *In re Harris*, 261 Kan. 1063, 1066, 934 P.2d 965 (1997).

Much of the disciplinary panel's report was stipulated to by the Respondent. See Supreme Court Rule 212(c) (2002 Kan. Ct. R. Annot. 266) ("Any part of the hearing report not specifically excepted to shall be deemed admitted."). Respondent did not take exception to any findings relating to stipulated violations of KRPC 1.15 and KRPC 8.4(a), (c), (d), and (g). Therefore, clear and convincing evidence supported the disciplinary panel's findings as to these charges.

The lone remaining issues before the panel and contested before this court were allegations of violations of KRPC 8.1(b), KRPC 8.4(b), and Supreme Court Rule 207(b).

Before the panel and this court, the Respondent denied he violated KRPC 8.1(b) and Supreme Court Rule 207(b) and asserted he fully cooperated in the disciplinary investigation. However, Respondent's own statements, Mr. Straub's testimony, and reports introduced into evidence provide clear and convincing evidence he intentionally misled Mr. Straub by providing incomplete and evasive answers and by failing to provide required information to correct Mr. Straub's misapprehensions, which he knew to exist. We concur in panel's findings as to violations of KRPC 8.1(b) and Supreme Court Rule 207(b).

Further, before this court, Respondent admitted he intentionally, and without authorization, deprived Mrs. Johnson and the

Topeka Lawyers Club of property by writing 47 checks from their accounts for his personal use. While he represented to this court he has repaid the funds borrowed, with interest, his admission was sufficient to find clear and convincing evidence of temporary deprivations of property which constitute multiple violations of K.S.A. 21-3705(a), criminal deprivation of property. These are criminal acts that reflect adversely on a lawyer's honesty, trustworthiness, or fitness as a lawyer. Accordingly, we find the Respondent violated KRPC 8.4(b).

After considering matters in mitigation and aggravation, the majority of the court concludes that Standards 4.11, 5.11(b), and 7.1 are clearly applicable to Respondent's circumstances. His level of misconduct, coupled with his repeated episodes of misconduct, require disbarment.

IT IS THEREFORE ORDERED that Douglas S. Wright be, and he is hereby, disbarred from the practice of law in the State of Kansas, that his privilege to practice law in the state of Kansas is hereby revoked, and that the Clerk of the Appellate Courts of Kansas strike the name of Douglas S. Wright from the role of attorneys licensed in the state of Kansas.

IT IS FURTHER ORDERED that Respondent pay Mrs. Johnson the principal amount of $2,609.47 and an additional $93 to reimburse her for overdraft charges that she incurred as a direct result of his taking money from her account. He is additionally ordered to pay interest on the money taken from Mrs. Johnson at 10% per annum from the time the funds were taken until she is paid in full; interest to the date of the hearing totaled $10,928.70. The restitution payment shall be made through the Disciplinary Administrator's office. The total amount of restitution — which includes $13,628.17 as of November 25, 2002 — shall be paid by the Respondent within 90 days after the release of this opinion. In order for Mrs. Johnson to continue to be eligible for Medicaid, her account must not exceed $2,000 at the end of any month. Consequently, the Respondent is ordered to work with the Kansas Department of Social and Rehabilitation Services to ensure that restitution is either used on exempt items for Mrs. Johnson or else

paid to the State prior to the end of the month in which it is paid in order to assure that her Medicaid eligibility is not disrupted and that Respondent does not cause his great aunt further financial harm.

IT IS FURTHER ORDERED that this order shall be published in the official Kansas Reports, that costs herein be assessed to the Respondent, and that the Respondent forthwith comply with Supreme Court Rule 218 (2002 Kan. Ct. R. Annot. 279).

ABBOTT and LUCKERT, JJ., not participating.

BRAZIL, S.J., and DAVID S. KNUDSON, J., assigned