No. 92,838

In the Matter of GERALD E. HERTACH, *Respondent.*
109 P.3d 1218

Opinion filed April 22, 2005.

*Alexander M. Walczak,* deputy disciplinary administrator, argued the cause and was on the brief for the petitioner.

*Stephen M. Joseph,* of Joseph & Hollander, P.A., of Wichita, argued the cause and was on the brief for respondent. *Gerald E. Hertach,* respondent, argued the cause pro se.

*Per Curiam:* This is an original action in discipline filed by the office of the Disciplinary Administrator against the respondent, Gerald E. Hertach, of Hutchinson, Kansas, an attorney admitted to the practice of law in Kansas in 1972.

A disciplinary panel of the Kansas Board for Discipline of Attorneys conducted a formal hearing, as required by Kansas Supreme Court Rule 211 (2004 Kan. Ct. R. Annot. 275). The panel unanimously found that Hertach violated Rules 8.4(b) and (c) (2004 Kan. Ct. R. Annot. 485) (misconduct) of the Kansas Rules of Professional Conduct (KRPC) by committing a criminal act that reflected adversely on his honesty, trustworthiness, and fitness as a lawyer and engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation. The panel also found Hertach violated Supreme Court Rule 211 by failing to timely file a written answer to the formal complaint. The panel unanimously recommended that Hertach be disbarred from the practice of law in Kansas. Hertach filed exceptions to the final hearing report, primarily challenging the disciplinary panel's findings regarding the factors which led to the recommended discipline.

The finding that Hertach violated KRPC 8.4(b) and (c) relates to the panel's conclusion that Hertach intentionally concealed his partnership with the Reno County Sheriff when contracting to run a jail annex for Reno County. Hertach's involvement in the Reno County jail operation dates back to 1993 when Reno County en-

tered into an agreement with House Arrest, Inc. (House Arrest), for "alternative incarceration." House Arrest ran a program in a state fair grounds building which housed inmates ordered to serve mandatory 2- or 5-day sentences, typically for convictions of driving under the influence or driving while suspended. Although House Arrest was originally incorporated by Jon Powell, Hertach eventually became resident agent, stockholder, secretary, and a director of House Arrest. When Powell left town, Hertach took over running the company and fulfilled the terms of the contract between House Arrest and Reno County.

Through his experience running House Arrest, Hertach became aware of the county's need for additional jail space and informed the Board of Reno County Commissioners (Board) of his interest in developing a privately run jail annex for the county. Hertach also discussed the county's need for additional jail space with Sheriff Larry Leslie and Undersheriff Kenneth Angell. Hertach, Sheriff Leslie, and Undersheriff Angell formed a "silent" partnership to provide the county with privately run jail space, agreeing to split the profits equally. The three men discussed the need for secrecy and decided to conceal the Sheriff's and Undersheriff's financial interests, recognizing that if those interests were known there would be "political roadblocks." Accordingly, none of the three disclosed their partnership to the Board. The three men also discussed the need to set up separate corporations to protect the profits from the jail annex contract. Hertach suggested that Sheriff Leslie and Undersheriff Angell set up corporations in Nevada. However, at some point, Undersheriff Angell told Hertach he no longer wanted to participate in the partnership because he believed there was a conflict of interest.

In formal and informal meetings with the Board, Sheriff Leslie wholeheartedly supported the idea that Hertach develop and run a private jail annex but did not disclose his financial interest in Hertach's proposal. According to County Commissioner Larry Sharp, Sheriff Leslie's support was integral to the Board's decision to approve Hertach's proposal.

In October 1997, Hertach incorporated MgtGp, Inc. (MGI). Hertach was resident agent, stockholder, secretary, treasurer, and

a director. In November 1997, MGI entered into a management agreement with the Board to develop and run a private jail annex.

In March 1998, Hertach incorporated Czech Capital & Management, Inc. In April 1998, Hertach incorporated Ten Corps, Inc., in Nevada through Laughlin Associates, Inc., a company that offered a "total privacy package" in incorporating businesses. In May 1998, Sheriff Leslie also utilized a privacy package to incorporate Kaw, Inc., in Nevada, also using Laughlin Associates, Inc. Sheriff Leslie also formed other companies called Golf, Gulf, and Star Enterprise.

Reno County paid MGI by check for operating the jail annex. MGI paid the expenses of running the jail annex and then transferred the remaining funds to Hertach's corporation Czech Capital & Management, Inc. That corporation split the funds equally, paying half to Hertach and half to Hertach's Nevada corporation Ten Corps, Inc. Ten Corps, Inc., then transferred its half of the funds to Sheriff Leslie's corporation Kaw, Inc., which in turn transferred the funds to either Golf, Gulf, or Star Enterprise where they were obtained by Sheriff Leslie.

About a year before the contract was due to expire, Hertach and Sheriff Leslie separately approached the Board requesting that the contract be extended. The Board entered into a second management agreement with MGI in January 2000. Again, neither Hertach nor Sheriff Leslie disclosed their silent partnership.

Between January 1998 and June 2001, Hertach operated the jail annex without incident. During that time period, Hertach and Sheriff Leslie personally received approximately $284,875 each.

In January 2001, the Kansas Bureau of Investigation began an investigation into the running of the jail annex and the MGI contract. In May 2001, the county filed a civil lawsuit. As a result, Central Bank and Trust was appointed as receiver. Reno County made payments under the MGI contract to the receiver, the expenses of operating the jail annex were paid, and the remaining profits were retained by the receiver pending the outcome of the civil suit.

In 2002, the Kansas Attorney General filed a complaint charging Hertach with 34 counts of bribery, 13 of which were later dismissed

based on the statute of limitations. The same day that the Attorney General filed the complaint, Hertach disclosed the charges to the Disciplinary Administrator.

In October 2002, the district court held a hearing on a motion in limine filed by the prosecution seeking to prevent Hertach from arguing to a jury that he was guilty of participating in a prohibited contract rather than bribery. When that motion was denied, the prosecution entered into plea negotiations with Hertach. On the day trial was to begin, the parties reached an agreement. The prosecutor filed an amended complaint charging Hertach with two counts of participation in a prohibited contract, class B misdemeanors in violation of K.S.A. 75-4304(b).

According to the plea agreement, Hertach agreed to recommend that the court set restitution at $750,000 to be paid jointly and severally by Hertach, Sheriff Leslie, and MGI. The parties arrived at this figure by roughly doubling the amount Sheriff Leslie profited by the contract and adding the amount Hertach profited by the contract.

At the plea hearing, Hertach pled guilty to the charges contained in the amended complaint, and the district court directed Hertach and Sheriff Leslie to provide the court with a workable restitution plan. Prior to sentencing, Hertach suggested to the Board that he be allowed to complete the terms of the contract and pay all of the profit to the county as restitution. The Board rejected this offer. Rather, Sheriff Leslie's successor terminated the MGI contract in December 2002.

Hertach never provided the court with a restitution plan. At sentencing, Hertach's counsel told the district court he had "no clue" how Hertach could pay $750,000 in restitution. He stated Hertach's only assets were exempt assets including pension funds, the family home, and a car. The prosecutor recommended that Hertach and Sheriff Leslie be sentenced to jail until they "get serious about this" and submit financial statements. The district court agreed, finding that Hertach had engaged in deceitful conduct founded on deliberate greed, and sentenced Hertach to two consecutive 6-month terms. The court agreed to consider a motion for parole after 90 days if Hertach provided a workable restitution

plan, but Hertach never did. Instead, he served the full 12 months in jail.

## Disciplinary Proceedings

In October 2003, the Deputy Disciplinary Administrator filed the formal complaint in this case, and Hertach filed a written answer in March 2004. As previously noted, after conducting a hearing, the disciplinary panel concluded Hertach violated Supreme Court Rule 211 by not timely filing an answer and also violated KRPC 8.4(b) and (c) which state that it is unprofessional misconduct for lawyer to "(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects" or "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation." (2004 Kan. Ct. R. Annot. 485.)

The disciplinary panel applied Standard 3 of the American Bar Association's Standards for Imposing Lawyer Sanctions (1991) as part of its analysis of what sanction to recommend to the court. Standard 3 states: "In imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors."

The panel concluded Hertach had violated his duty to maintain personal integrity by engaging in serious criminal conduct, that Hertach had intentionally violated his duty, and that Hertach had caused actual injury to Reno County.

The disciplinary panel made findings regarding a variety of aggravating factors, including findings that Hertach engaged in deceitful conduct motivated by greed; the ongoing nature of his participation in prohibited contracts showed a pattern of misconduct; he engaged in bad faith obstruction of the disciplinary proceeding by failing to file a timely written answer; he refused to acknowledge the wrongful nature of his conduct; he has substantial experience in the practice of law; he was indifferent toward making restitution; and he had engaged in illegal conduct.

As to mitigating factors, the disciplinary panel found that Hertach had no prior disciplinary record; he self-reported his miscon-

duct the day charges were filed; prior to the misconduct in this case, he was a productive and respected member of the bar with a good character and reputation; and he had already been sanctioned for his misconduct by serving 12 months in jail.

The disciplinary panel also considered ABA Standards 5.11 and 5.12 which provide guidance as to when disbarment or suspension are appropriate sanctions. The panel concluded that Hertach's conduct fell within Standard 5.11, the disbarment guideline, because he had misrepresented facts to the Board by omission, defrauded Reno County by inducing it to enter into a contract it would not otherwise have entered, and conspired with Sheriff Leslie to defraud Reno County. Because Hertach's conduct was encompassed by Standard 5.11, the disciplinary panel found disbarment rather than suspension to be the appropriate discipline. The panel also recommended that if Hertach eventually applies for reinstatement, he should be required to establish that he has repaid Reno County for the profits he received as a result of the prohibited contracts.

### Proceedings Before This Court

This court's standard of review in disciplinary cases is well known:

" 'In disciplinary matters, this court must examine the evidence and determine the judgment to be entered. In doing so, the findings of fact, conclusions of law, and recommendations made by the disciplinary panel are advisory only, but will be given the same dignity as a special verdict by a jury or the findings of a trial court. The disciplinary panel's report will be adopted where amply sustained by the evidence, but not where it is against the clear weight of the evidence or where the evidence consisted of sharply conflicting testimony. [Citations omitted.] We apply these rules in considering the evidence, the findings of the disciplinary panel, and the arguments of the parties in making our determination of whether violations of KRPC exist, and, if they do, deciding upon the appropriate discipline to be imposed. [Citation omitted.]' " *In re Wright*, 276 Kan. 357, 370, 76 P.3d 1018 (2003).

Hence, our first inquiry is whether there is competent evidence to support the panel's findings that Hertach violated KRPC 8.4(b) and (c) and Rule 211. Hertach admitted in his testimony before the panel that he violated KRPC 8.4(b) and (c). Further, while he argued his delay in answering the disciplinary complaint was because of his incarceration and that the delay did not create any

prejudice, he admitted that he did not file his answer to the disciplinary complaint within 20 days after service as required by Rule 211 and did not seek an extension of time. Hertach answered nearly 6 months after the formal complaint was filed and only 7 days prior to the hearing. Thus, the disciplinary panel's findings of violations of KRPC 8.4(b) and (c) and Rule 211 are supported by competent evidence and the panel's findings regarding these violations are adopted by the court.

Next, we must examine whether there is competent evidence to support the panel's findings and conclusions regarding the severity of the disciplinary sanction. Hertach takes exception to several conclusions reached by the panel regarding various factors under ABA Standard 3, quoted above. The four-part analysis of Standard 3 is framed by its first inquiry which is: what is the nature of the duty which was violated. As the comments to the Standard explain, this inquiry includes a determination of whether the duty was to the client, the public, the legal system, or the profession. ABA Standards for Imposing Lawyer Sanctions, Theoretical Framework (1991).

In this case, the disciplinary panel found the duty which Hertach violated was his duty to maintain personal integrity. The ABA commentary explains that attorneys owe this duty to the public which has the right to trust lawyers. "The community expects lawyers to exhibit the highest standards of honesty and integrity, and lawyers have a duty not to engage in conduct involving dishonesty, fraud, or interference with the administration of justice." ABA Standards for Imposing Lawyer Sanctions, Theoretical Framework, p. 5 (1991).

The second inquiry under Standard 3 relates to the level of culpability, in other words, whether the conduct was intentional, knowing, or negligent. Under the ABA Standards, severe disciplinary sanctions are generally reserved for intentional conduct.

Hertach takes exception to the disciplinary panel's conclusion that he intentionally violated his duty to the public, contending that while he knew Reno County was not aware of Sheriff Leslie's involvement in the partnership, he did not act with the intent to violate any criminal law but out of "political expediency." However,

there is a plethora of evidence which supports the disciplinary panel's conclusion that Hertach acted intentionally, including the agreement to keep the partnership a secret, the complicated scheme to launder money from the jail operation by funneling it through several corporations and back to Sheriff Leslie, and Hertach's effort to destroy any paper trail regarding those corporations. Further, all of this evidence was sufficient to support the disciplinary panel's finding that Hertach intentionally misrepresented facts by omission and did so for the purpose of inducing a contract which he knew would not be executed if the facts were known. As the sentencing court stated, Hertach acted with "pure, deliberate greed."

The third step of analysis under Standard 3.0 is to examine the extent of the actual or potential injury. The panel found that there had been actual injury. Some of the panel's findings relate to the amount of money which Hertach and the Sheriff received over and above the costs of actual operation of the jail annex. Hertach argues that these findings are flawed and urges us to apply tort principles of causation and damages. Under such a standard, he argues there was no injury because the jail annex operation actually saved Reno County a substantial amount of money compared to the costs if the county had operated the facility, there was no evidence anyone would have contracted for less, there was no evidence that the contract rate was above market rate, and there were never any complaints about MGI's management of the facility.

These arguments ignore the nature of the duty which Hertach violated. The ABA Theoretical Framework explains: "The extent of the injury is defined by the type of duty violated and the extent of actual or potential harm." It follows that violation of some duties does not always result in a monetary loss or an injury to which our tort system would ascribe a recoverable damage, especially in cases such as this where the duty is defined as one owed to the public or the legal system. For example, the Theoretical Framework includes an example of a case where a lawyer tampers with a witness. In such a circumstance, "the injury is measured by evaluating the level of interference or potential interference with the legal proceeding. In this model the standards refer to various levels of in-

jury: 'serious injury,' 'injury,' and 'little or no injury.' " ABA Standards for Imposing Lawyer Sanctions, Theoretical Framework, p. 6 (1991).

As previously discussed, Hertach violated the public's trust. He did so in a very public manner, violating criminal statutes relating to public contracts. The sentencing court, in rejecting the suggestion that a jail sentence served no purpose, cited the interest of deterrence in a case involving the chief law enforcement official in the county and a lawyer who acted out of "pure, deliberate greed." Hertach's conduct was criminal, notorious, and seriously injurious.

Further, there was monetary injury to the public which incurred the cost of taking legal action to terminate the MGI contract and to appoint a receiver. Thus, there is ample evidence that serious injury resulted from Hertach's unprofessional conduct.

The final step in considering the appropriate sanction is to examine aggravating and mitigating factors. Hertach takes exception with several of the conclusions of the disciplinary panel.

First, he challenges the disciplinary panel's finding that, despite Hertach's self-reporting of his misconduct, he "engaged in a bad faith obstruction of the disciplinary proceeding by failing to file a written Answer to the Formal Complaint for nearly six months." The conclusion is supported by competent evidence. Hertach never requested an extension to file his answer and, instead, waited until 1 week before the hearing to file an answer in which he maintained that his culpability was minor.

Next, Hertach takes exception with the conclusion that he minimized his wrongful conduct, arguing that the panel misconstrued legal arguments as minimization. However, our independent review of Hertach's answer and other portions of the record confirms the panel's conclusion.

Hertach also takes exception with the finding that he was indifferent to making restitution, arguing that the panel confused inability with indifference. However, the record and Hertach's statements to the court reflect more indifference than inability.

There is also evidence in the record which amply supports the other aggravating factors cited by the disciplinary panel to which Hertach did not take exception, including: Hertach engaged in de-

ceitful conduct motivated by greed; the ongoing nature of his participation in prohibited contracts showed a pattern of misconduct; he has substantial experience in the practice of law; and he had engaged in illegal conduct.

The record also provides evidence of the mitigating factors cited by the panel: Hertach had no prior disciplinary record; he self-reported his misconduct the day charges were filed; prior to the misconduct in this case, he was a productive and respected member of the bar with a good character and reputation; and he had already been sanctioned for his misconduct by serving 12 months in jail.

With these factors in mind, the panel examined the guidelines adopted by the ABA and concluded that disbarment was the appropriate sanction. Hertach argues his conduct does not match the elements of Standard 5.11 which establishes guidelines for determining if disbarment should be ordered.

Standard 5.11 provides:

"Disbarment is generally appropriate when:
'(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft . . . or an attempt or conspiracy or solicitation of another to commit any of these offenses; or
'(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.' "

Applying these provisions, the disciplinary panel found:

"The evidence presented in this case involved evidence that the Respondent *misrepresented* facts to the Board by omission, that the Respondent *defrauded* Reno County by inducing it to enter into a contract that it would not otherwise have entered, and that the Respondent *conspired* with Sheriff Leslie to defraud Reno County. Because three of the factors detailed in Standard 5.11 are present, the Hearing Panel concludes that Standard 5.11 is controlling in this case.

"The hearing panel disagrees with counsel for the Respondent's assessment that the criminal behavior in this case is not serious. The Respondent intentionally misled a county government in order to obtain a contract for services. Engaging in criminal conduct that reflects on a person's honesty is serious criminal conduct for any attorney."

Hertach correctly argues that he was not convicted of a crime which includes "intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft" as a necessary element of the crime. Participation in a prohibited contract is defined by K.S.A. 75-4304(b), which provides: "No person or business shall enter into any contract where any local governmental officer or employee, acting in that capacity, is a signatory to or a participant in the making of the contract and is employed by or has a substantial interest in the person or business." The statute does not include elements of fraud or dishonesty.

However, under Standard 5.11(b), disbarment is appropriate where a lawyer engages in "intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." Conviction or even the charging of a crime with these elements is not necessary for this provision to apply. As previously discussed, Hertach admitted to violations of KRPC 8.4(b) and (c), which provide that it is professional misconduct to "(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects" and to "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation." (2004 Kan. Ct. R. Annot. 485). Under the facts of this case, the contract was prohibited because of Sheriff Leslie's involvement, a fact which was deliberately and intentionally concealed in an act of fraud, deceit, and misrepresentation by omission. This purposeful omission and criminal conduct reflects upon Hertach's honesty, trustworthiness, and fitness as an attorney.

Hertach also contends that his misconduct does not seriously adversely reflect on his ability to practice law since he was acting as a principal and not as a lawyer representing a client when he obtained the MGI contract. However, as the sentencing court noted, Hertach was "a lawyer well knowing what the law is with regard to conflict of interest." Furthermore, Hertach's argument ignores the panel's conclusion that the duty which was violated was a public duty—the public's right to have an attorney act in a trustworthy fashion. Honesty and trustworthiness are core values of our

profession, essential to the practice of law, and Hertach, by his own admission, engaged in criminal conduct which reflected adversely on his honesty, trustworthiness, and fitness as a lawyer.

The court unanimously concludes that the disciplinary panel's recommended discipline of disbarment is warranted and appropriate. We agree with and adopt the disciplinary panel's conclusions and recommendations.

IT IS THEREFORE ORDERED that the respondent, Gerald E. Hertach, be and he is hereby disbarred from the practice of law in the state of Kansas in accordance with Supreme Court Rule 203(a)(1) (2004 Kan. Ct. R. Annot. 237) for his violations of the Kansas Rules of Professional Conduct and Supreme Court Rules.

IT IS FURTHER ORDERED that the Clerk of the Appellate Courts strike the name of Gerald E. Hertach from the roll of attorneys licensed to practice law in Kansas.

IT IS FURTHER ORDERED that Gerald E. Hertach comply with Supreme Court Rule 218 (2004 Kan. Ct. R. Annot. 301).

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of this action be assessed to respondent.

GERNON, J., not participating.

LARSON, S.J., assigned.