No. 33,474

School District No. 5, in Cherokee County, *Appellee,* v. Community High School, of Cherokee County, G. A. Sanders, as Ex-officio Chairman, C. W. Vanzandt, H. H. Brookhart, Ralph Longstaff, H. F. Souder, R. W. Cunningham and J. M. Hall, as Members of the Board of Trustees, etc., *Appellants.*

Opinion filed July 10, 1937.

F. W. Boss and Marc G. Boss, both of Columbus, for the appellants.

C. O. Pingry and Carl Pingry, both of Pittsburg, for the appellee.

The opinion of the court was delivered by

Allen, J.: This was an action by school district No. 5 in Cherokee county against the community high school of Cherokee county for tuition of pupils from the community high-school district attending school district No. 5.

It was alleged in plaintiff's petition that school district No. 5 is located in Cherokee county, Kansas, outside the boundaries of the defendant community high-school district, and that there was maintained in the plaintiff school district an approved and accredited high school; that during the school year from September, 1935, until January, 1936, inclusive, pupils residing within the boundaries of the community high-school district, with the approval of the county superintendent, attended the high school of the plaintiff; that a list of said pupils, with a detailed account of their attendance and an

itemized and verified voucher and claim of the clerk of the board of directors of the plaintiff school district for tuition due, was filed with the defendant community high school as provided by law and that the board of trustees of said defendant community high school disallowed and refused to pay the voucher and claim of plaintiff. It was further alleged that the defendant was indebted to the plaintiff at the rate of $2 per week tuition fee for the time each pupil was in actual attendance at plaintiff's high school, making a total of $5,477 for which judgment was asked. Plaintiff's claim sued on is based upon the statutory liability created under and by virtue of G. S. 1935, 72-2505. Defendant, in its answer, claims that section 72-2505 is unconstitutional for the following reasons: (a) because it is an unlawful attempt to delegate legislative power to the county superintendent; (b) because it does not have uniform operation throughout the state; (c) because it is an unlawful attempt to divert funds raised by a tax levied for one purpose and used for an altogether different purpose.

The case was tried by the court. A part of defendant's answer was on motion stricken out, and thereafter plaintiff filed a motion for judgment on the pleadings, which motion was by the court sustained and judgment rendered for the plaintiff. From this judgment defendant has appealed.

Under the practice in this state a motion for judgment on the pleadings is equivalent to a demurrer. (*Hutchison v. Myers,* 52 Kan. 290, 34 Pac. 742; *Fielding v. Alkire,* 124 Kan. 592, 261 Pac. 597.) The question before us is, Do the petition and the answer, considered together, present such a statement of facts as will justify an affirmance of this judgment?

As stated above, the cause of action is founded upon G. S. 1935, 72-2505. As this section is assailed as being unconstitutional, its provisions must be examined. The pertinent portion of that section reads as follows:

"That instruction in said community high schools shall be free to all pupils living within the boundaries of said community high-school districts. If any pupil, living within the boundary of said community high-school district, shall, with the approval of the county superintendent, attend any other high school, either approved or accredited outside the boundaries of said community high school, the board of trustees of said community high school shall pay or cause to be paid into the treasury of the said high school which such pupil attends a tuition fee of two dollars per week for the time such pupil is in actual attendance at said high school; . . ."

The argument of defendant as to the unconstitutionality of this section may be outlined as follows: . Defendant asserts that this section is unconstitutional because it attempts to confer upon the county superintendent the absolute unqualified and unrestricted power to decide the conditions under which a pupil residing in one district may attend school in some other district at the expense of his home district, but neglects to prescribe any policy, rules, standards or conditions to guide him in the exercise of such power; that determination of the district where a pupil shall attend school is a legislative question; that the conditions and circumstances under which a pupil residing in one district may attend school outside his district are likewise matters for legislative determination, direction and prescription. Defendant asserts that section 72-2505 attempts to delegate to the county superintendent the power of determining what the law shall be as to the attendance of pupils in such high-school districts. Defendant also asserts that the general rule as to the delegation of power by the legislature might be stated as follows: The legislature may not delegate to an executive or administrative officer the power to determine what the law shall be. It may, however, enact legislation setting up the conditions and circumstances under which a law is to be applied, and then designate some board or officer as a fact-finding agency to ascertain the existence or nonexistence of the specified conditions or circumstances which would bring a particular case within the purview of the statute. Also in cases where conditions and circumstances are so many and varied as to make it impracticable for the legislature to set them out in detail, the legislature may enact general provisions stating the legislative policy and then authorize some administrative board or officer to make and enforce minor rules and regulations, within the limitation and scope of the declared policy, for the purpose of carrying it out. Defendant quotes from the case of *State v. Railway Co.*, 76 Kan. 467, 92 Pac. 606, which reads as follows:

" 'While the legislature possesses all of the legislative power of the state, and while it is true that they cannot delegate any portion of that power to any other body, tribunal, or person, yet it is generally found impracticable for them to exercise this power in detail. They may do so if they choose, or they may enact general provisions, and leave those who are to act under these general provisions to use their discretion in filling up the details. They may mark out the great outlines, and leave those who are to act within these outlines to use their discretion in carrying out the minor regulations' . . .

"The power conferred is uniformly held to be administrative in its char-

acter, though the term 'executive' has been used by the supreme court of the United States in defining it. It has, however, no relation to, or dependence upon, the executive power spoken of as one of the three governmental powers, for its function is that of carrying into effect the legislative will, and in its operation it is a part of the legislative act. . . .

"'Such a commission is merely an administrative board created by the state for carrying into effect the will of the state as expressed by its legislation.'" (pp. 474, 476.)

The contentions of the defendant, we believe, are fairly set forth in the foregoing paragraphs. That the fundamental principles of the law therein set forth are correct cannot be questioned. In the application of those rules to the facts in this controversy, however, we are unable to agree with counsel for defendants.

The county superintendent of schools is a constitutional official. (Const., art. 6, sec. 1.) By the statute of this state, G. S. 1935, 72-203, he is required to qualify by taking and subscribing to an oath to support the state and federal constitutions, and to give bond for the faithful performance of his duties. His duties are set forth with great particularity in G. S. 1935, 72-204.

It is apparent that in the general scheme of the Kansas educational system the county superintendent is an important official, and in the exercise of his manifold duties he necessarily must be clothed with a wide discretion.

Under G. S. 1935, 72-2505, the superintendent has certain ministerial duties to perform. The standards and guide rules are provided in the statute. The school the pupil attends with the approval of the county superintendent must be a high school approved or accredited by the state board of education. The high school which he attends must be in the county in which the pupil resides or in an adjoining county. The pupil must live within the community high-school district. The statute reads: "If any pupil, living within the boundary of said community high-school district, shall, with the approval of the county superintendent, attend any other high school, . . ." then the community high school shall pay the tuition. When the county superintendent has found the basic facts for his approval as above noted, his approval becomes a mere ministerial act, which he may not arbitrarily refuse to perform. (*Johnson v. Connelly*, 88 Kan. 861, 129 Pac. 1192.)

The standards and guide rules may be stated in a negative as well as in a positive form. Thus, if the law had directed that the county superintendent should, before giving his approval, ascertain that the

pupil was in fact a resident of the community high-school district, that the high school he wishes to attend was duly accredited, that the high school was in the same or in an adjoining county, in such case we apprehend no question would have been raised as to the standard and guide rules to direct his actions. But the same directions are in the statute, only stated in an indirect or negative form. The provision inserted in the statute for the approval of the county superintendent is merely a safeguard inserted by the legislature to insure the carrying out of the other provisions of the statute. If the terms and conditions of the statute are complied with he could not arbitrarily refuse his approval. By the very terms of the statute the authority of the superintendent is defined and the ambit of his duties is circumscribed. This is not a roving commission but a directed course of action.

The supreme court of Illinois had a similar question before it in the following cases: *Bd. of Education v. Bd. of Education,* 314 Ill. 83, 145 N. E. 169; *Weatherford v. School Directors,* 317 Ill. 495, 148 N. E. 244.

In the Weatherford case it was contended that the law of Illinois granting to the county superintendent the power to approve the transfer of a pupil from one high-school district to another was a delegation of legislative power and therefore necessarily unconstitutional. The court said:

"The first contention has been determined adversely to appellants in *Board of Education of Princeton School District v. Board of Education of Wyanet School District,* 314 Ill. 83. It was there held that the General Assembly could not deal with the details of every particular case covered by a statute; that the method of executing a law must necessarily be left in some cases to the reasonable discretion of administrative officers, and that the question of the convenience of school attendance is of an administrative character and properly left to the decision of the county superintendent of schools." (p. 498.)

We therefore hold that the statute G. S. 1935, 72-2505, is not unconstitutional for the alleged reason that it attempts to delegate legislative power to the county superintendent.

It is next urged that G. S. 1935, 72-2505, violates article 2, section 17, of the constitution of Kansas, which provides that "all laws of a general nature shall have a uniform operation throughout the state." It is conceded that the statute is a law of a general nature. The contention of defendant is stated thus: "In other words, under the statute as it now exists, there might possibly be, and there very probably are, as many separate and distinct applications of

the statute as there are county superintendents administering it. This means that a student residing in one county might secure the approval of his county superintendent while another student residing in a different county might, under identical circumstances and conditions, have his application refused."

The great law of impartiality obliges us to candidly admit the force of this indictment. The complaint, however, is leveled at the undeniable truth that the law, however formulated, must be administered by frail and erring human beings. Remedial relief in this regard is beyond the jurisdiction of this court. However, the statute does not cease to have a uniform operation throughout the state, in the sense commanded by the constitution, because it may not be construed alike by all county superintendents. We think the statute has uniform operation over the state limited by standards and restrictions therein set forth.

It is next urged that G. S. 1935, 72-2505, violates article 11, section 5, of the constitution of Kansas, which provides that "No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same; to which object only such tax shall be applied."

Under the provisions of G. S. 1935, 72-2505, the trustees of the community high school are directed to pay tuition to the high school which the pupil attends. G. S. 1935, 72-2516, prior to the amendment of 1937, provided for a levy not to exceed four mills to pay teachers, for various other purposes mentioned, and to pay incidental expenses of said high school. G. S. 1935, 79-1957, prior to the amendment of 1937, authorized the trustees of any community high school to levy taxes at the rates specified, including four mills to pay general expenses, and for other purposes therein mentioned. Assuming, as defendant claims, that there are no other sections applicable, it would seem clear that there is ample authority in these sections to levy taxes to pay the tuition expressly directed to be paid under G. S. 1935, 72-2505. Neither do we think there was reversible error in the action of the trial court in sustaining the motion to strike out certain allegations in defendant's answer.

It may be true that the defendant is subjected to an unjust burden by the enforcement of the law as it now exists. If so, an appeal must be made to the legislature and not to the courts.

Finding no error in the record, the judgment is affirmed.