(268 P.3d 1231)
No. 104,634

DOUGLAS S. WRIGHT, *Appellant*, v. KANSAS STATE BOARD OF
EDUCATION, *Appellee*.

Opinion filed January 20, 2012.

*Thomas D. Haney*, of Henson, Hutton, Mudrick & Gragson, LLP, of Topeka, for appellant, and *Douglas S. Wright*, appellant pro se.

*Mark A. Ferguson*, of Gates, Shields & Ferguson, P.A., of Overland Park, *M. Kevin Ireland*, of Office of General Counsel, Kansas State Department of Education, and *Cheryl L. Whelan*, general counsel, of Kansas State Department of Education, for appellee.

Before ATCHESON, P.J., HILL and STANDRIDGE, JJ.

HILL, J.: Douglas S. Wright wants a Kansas teaching license, but the Kansas State Board of Education denied his application and the District Court of Shawnee County affirmed its decision. We affirm as well.

*Wright must change careers due to his disbarment.*

Wright began practicing law in 1973. That career ended in 2003, when he was convicted of four counts of stealing money. He was also convicted of perjury for lying to an investigator during his disbarment procedure. Wright served a prison sentence. These convictions were expunged in March 2009.

The Kansas Supreme Court disbarred Wright in September 2003. See *In re Wright*, 276 Kan. 357, 76 P.3d 1018 (2003). One cannot expunge the record of a disbarment proceeding.

After his release from prison, Wright sold cars at two different dealerships which required him to obtain a car seller's license through the Kansas Department of Revenue. Then, in 2007, he took some education classes at Washburn University, earned good grades, and took the first steps toward a career in public education by trying to get a license to teach in Kansas.

First, Wright applied to the State Board of Education for an emergency substitute and conditional teacher's license. After reviewing his application, the Professional Practices Commission recommended unanimously that the Board should deny Wright's application because it believed Wright's felony convictions and disbarment stemming from his work as an attorney violated the public trust and confidence placed in teachers. This Commission cited K.A.R. 91-22-1a as authority.

After that, the matter was taken up by the State Board of Education. Ultimately, the Board voted 8-2 to adopt the findings of fact and conclusions of the Commission and denied Wright's application for a teaching license. The Board's final order was entered on May 12, 2009.

Following the Board's rejection, Wright sought judicial review of the Board's decision in the Shawnee County District Court. Initially, the district court decided it was unclear if the Board considered whether Wright was sufficiently rehabilitated and whether

he was fit *at that time* to receive a teaching license. The district court remanded the case to the Board for additional findings of fact and conclusions of law consistent with its order.

In due course, the Board made additional findings of fact and conclusions of law and again decided there was insufficient evidence of Wright's rehabilitation to permit his licensure:

"[T]he gravity of the underlying nature of [Wright's] conduct in engaging in deliberate and repeated acts of dishonesty over an extended period of years while in a position of public trust as evidenced by [Wright's] felonious conduct *and* his conduct that resulted in his disbarment from the practice of law continues to be a factor in his fitness to be a member of the teaching profession. Therefore, it cannot be concluded that sufficient evidence of rehabilitation exists within the meaning and context of K.S.A. [2008 Supp.] 72-1397(c) or K.A.R. 91-22-1a(g) to warrant issuing an educator's license to [Wright] at this time."

This time, while reviewing the Board's findings and conclusions after remand, the district court decided the Board's decision should be affirmed. When viewing the agency record as a whole, the district court determined it could not find that the Board's decision was without foundation in fact. The district court stated it also could not find the Board acted in an arbitrary or capricious manner. The district court found there was evidence that the Board had considered the expungement of Wright's criminal record.

Now, in this appeal Wright makes a three-way attack on the Board's actions. First, he contends the Board misinterpreted the law, K.S.A. 2008 Supp. 72-1397(c), by considering his conduct more than 5 years prior to his application. Next, Wright argues the Board's decision is not supported by substantial competent evidence and the district court failed to look at the record as a whole as required by law. Finally, in Wright's opinion, the Board's decision was unreasonable, arbitrary, and capricious and must be overturned. We will address these issues in that order.

*We find no error by the Board either in interpreting or applying the law.*

Wright argues the Board of Education failed to properly apply K.S.A. 2008 Supp. 72-1397, K.A.R. 91-22-1a, and the expungement laws in making its decision. The parties do not dispute the validity

of the laws or regulations. Therefore, we review such an agency action in the same way as the district court. *Coma Corporation v. Kansas Dept. of Labor*, 283 Kan. 625, 628, 154 P.3d 1080 (2007).

First, a review of some points of law is helpful here. K.S.A. 77-621 provides the scope of judicial review:

"(a) Except to the extent that this act or another statute provides otherwise:

(1) The burden of proving the invalidity of agency action is on the party asserting invalidity; and

(2) the validity of agency action shall be determined in accordance with the standards of judicial review provided in this section, as applied to the agency action at the time it was taken.

"(b) The court shall make a separate and distinct ruling on each material issue on which the court's decision is based.

"(c) The court shall grant relief only if it determines any one or more of the following:

(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

(3) the agency has not decided an issue requiring resolution;

(4) the agency has erroneously interpreted or applied the law;

(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

(8) the agency action is otherwise unreasonable, arbitrary or capricious.

"(d) In making the foregoing determinations, due account shall be taken by the court of the rule of harmless error."

In this appeal, we look first at the statute.

The law prohibits the Board of Education from issuing teaching licenses to people convicted of certain specified crimes not involved here. In some instances, with the passage of time, the Board can issue licenses to people who have committed some types of crimes and are rehabilitated. K.S.A. 2008 Supp. 72-1397(b)(5) states that the Board shall not knowingly issue a license to a person

who has been convicted of felony theft. This is subject, however, to K.S.A. 2008 Supp. 72-1397(c), which states that the Board *may issue* a license to someone convicted of a crime listed in subsection (b) (including felony theft) if the Board determines the person had been rehabilitated for a period of *at least 5 years* from the date of conviction or commission of the act.

In deciding whether to grant a license to a person who has been convicted of a crime listed in K.S.A. 2008 Supp. 72-1397(b), the statute gives the Board a nonexclusive list of factors it may consider when pondering these questions:

"(1) The nature and seriousness of the offense or act;

"(2) the conduct of the person subsequent to commission of the offense or act;

"(3) the time elapsed since the commission of the offense or act;

"(4) the age of the person at the time of the offense or act;

"(5) whether the offense or act was an isolated or recurring incident; and

"(6) discharge from probation, pardon or expungement." K.S.A. 2008 Supp. 72-1397(c)(1)-(6).

A review of the regulation is helpful here. K.A.R. 91-22-1a states that the Board may deny a teaching license for "misconduct or other just cause, including . . . conviction of any crime punishable as a felony." See K.A.R. 91-22-1a(a)(1) and (b). If a person has been denied a license or had his or her license revoked, that person can apply for a license by completing an application and submitting evidence of rehabilitation to the Commission. The regulation states: "The evidence shall demonstrate that the grounds for denial or revocation have ceased to be a factor in the fitness of the person seeking licensure." K.A.R. 91-22-1a(g)(1). It also lists factors that shall be *relevant to* rehabilitation, which are the same factors as K.S.A. 2008 Supp. 72-1397(c)(1)-(6), with the additional factors: "the extent to which a license may offer an opportunity to engage in conduct of a similar type that resulted in the denial or revocation" and "the actions of the person after the denial or revocation." See K.A.R. 91-22-1a(g)(1)(A)-(H).

We pause here to note that the Board treated Wright's application as an application for a reinstatement of a teaching license and not an application for a new license. The Board reasoned that because K.S.A. 72-8501 states that teaching and school adminis-

tration are professions with all the similar rights, responsibilities, and privileges accorded other legally recognized professions, and since Wright had been disbarred from another profession, *i.e.*, the practice of law, then this case is equivalent to having had a teaching license revoked and the applicant is now seeking reinstatement. The district court had no qualms about this approach, and neither do we in light of the fact that the Board was then, at the insistence of the district court, looking at the rehabilitation of Wright and his fitness to teach. We do not think this reasoning placed any greater burden on Wright because his application to teach did come after his conviction, and all six elements of K.S.A. 2008 Supp. 72-1397(c) had to be considered by the Board. Those six elements serve as benchmarks for deciding if someone is rehabilitated.

We are mindful that the district court returned this matter to the Board to make findings about Wright's rehabilitation and whether his previous conduct was still a factor in deciding his fitness to teach. In its second look, the Board concluded the underlying nature of Wright's felonious conduct and his conduct that resulted in his disbarment from the practice of law was clearly relevant to his fitness for licensure as an educator. The Board decided Wright engaged in deliberate and repeated acts of dishonesty over an extended period of years while in a position of public trust. Wright now seeks licensure in another profession as an educator in which members, likewise, are in a position of public trust.

To us, Wright argues that K.S.A. 2008 Supp. 72-1397(c) required the Board to consider only his conduct in the past 5 years to determine whether he had been rehabilitated. Further, Wright contends the Board has ignored the evidence he presented in support of his rehabilitation, but instead it simply considered his felonious conduct to be so serious that he cannot be granted a teaching license. According to Wright, this was an erroneous interpretation and misapplication of the law.

No one in this case has faulted Wright's conduct over the past few years. Even some of the Board members went out of their way to congratulate him on his endeavors for self-improvement, as did the district court. But, we think Wright's view of the statute is too limited. K.S.A. 2008 Supp. 72-1397(c) clearly states the Board *may*

issue the teaching license, implying discretion to deny an application, and the rehabilitation must be for *at least* 5 years, implying the Board could require a longer term of rehabilitation before issuing a license. This statute implies a case-by-case approach to this determination. If the legislature wanted to limit the rehabilitation period to 5 years, it certainly could have written the statute in that fashion.

Conversely, the Board takes a different tack by pointing out that the basis of its decision was not the statute, but the regulation— K.A.R. 91-22-1a(g)(1). K.A.R. 91-22-1a(b) states: "A license may be denied by the state board to any person who fails to meet the licensure requirement of the state board or for any act for which a license may be suspended or revoked pursuant to subsection (a) [Conviction of a felony crime.]." Further along this line, the Board contends it properly applied K.A.R. 91-22-1a(g), which in addition to consideration of rehabilitative conduct in the past 5 years, requires consideration of whether the grounds for denial or revocation of a license have ceased to be a factor in the fitness of the person seeking licensure. K.A.R. 91-22-1a(g)(1).

We fundamentally agree with the Board that, by law, it is required to determine the extent of an applicant's efforts at rehabilitation, as well as the fitness of an applicant to be a member of the teaching profession as reflected by K.S.A. 72-8501. Five years of rehabilitation may not necessarily mean an applicant is fit to teach. Wright does not convince us that the Board misinterpreted the law or misapplied the regulations. We look now at the issue of expungement.

Wright argues the Board erred in considering his convictions that had been expunged because under K.S.A. 2008 Supp. 21-4619(f) and (h), he should be treated by the Board as if he had not been arrested or convicted of the crimes and he would not have to disclose the convictions on his application for a teaching license. Wright contends that the denial of his application was based on his felony convictions, which, after the date of the expungement, do not exist.

We note first that his application was made before the expungement of his record, and the Board's denial also included the fact

that he was disbarred based on acts of professional misconduct and a pattern of conduct involving dishonesty. The Board made it clear in its additional findings and conclusions that it was not denying Wright's application for a license because Wright was a convicted felon, but it was considering the nature and seriousness of the conduct and his conduct that resulted in disbarment from the practice of law. Furthermore, both the statute and the regulation require the Board to consider expungement as a factor for rehabilitation. K.S.A. 2008 Supp. 72-1397(c)(6); K.A.R. 91-22-1a(g)(1)(H). Also, the regulation allows the Board to deny an application for "misconduct or other just cause." K.A.R. 91-22-1a(a) and (b). In addition, most of the details of Wright's conduct can be read in the Supreme Court's disbarment order. *Wright*, 276 Kan. 357. That record never fades. We see no violation of the expungement laws by the Board.

Wright has not met his burden to prove the Board erroneously interpreted or applied the law.

*Substantial evidence supports the Board's findings.*

Wright's next argument is that he is entitled to relief from the Board's decision under K.S.A. 77-621(c)(7) because the Board's decision was not supported by substantial competent evidence in light of the record as a whole. Wright also claims the district court erred in failing to look at all the evidence and in only looking to see if substantial competent evidence supported the Board's findings. Wright contends this court is, therefore, required to remand the case to the district court.

We acknowledge that there have been recent amendments to the Kansas Judicial Review Act that change our scope of review. But our Supreme Court determined that the savings clauses in K.S.A. 77-621(a)(2) and K.S.A. 2010 Supp. 77-621(a)(2) provide that the version of the Judicial Review Act in effect at the time of the agency decision controls. See *Redd v. Kansas Truck Center*, 291 Kan. 176, 183, 239 P.3d 66 (2010). Thus, the recent changes in the Act do not apply here because the Board made its decision in May 2009. Therefore, we look to see if there is substantial competent evidence to support the Board's ruling. Substantial evidence

is "evidence possessing something of substance and relevant consequence to induce the conclusion that the [decision] was proper, furnishing a basis of fact from which the issue raised could be easily resolved." 291 Kan. at 183-84. The Board's decision should be upheld if it is supported by substantial evidence, even if there is other evidence in the record supporting a contrary finding. 291 Kan. at 184. "In applying the substantial evidence test under K.S.A. 77-621(c)(7), courts may not reweigh the facts, try the case *de novo*, or substitute their own judgment even if they would have found differently." *Blue Cross & Blue Shield of Kansas, Inc. v. Praeger*, 276 Kan. 232, 263, 75 P.3d 226 (2003).

Wright takes issue with the Board's findings and conclusions on remand; specifically paragraphs 11, 12, and 13 of the Board's findings of fact and paragraphs 7, 21, and 22 of the Board's conclusions. The administrative record consists mostly of documents submitted by Wright and his testimony. Many of the facts concerning Wright's conduct were gleaned by the Board from details found in the Supreme Court's decision in *Wright*, 276 Kan. 357. We will examine each questioned paragraph.

First, in paragraph 11 of the Board's findings of fact, the Board found Wright attempted to detract from the seriousness of his criminal conduct by stating that "Kansas categorizes felonies from level 1 (most serious) to level 9 (least serious)." Wright was convicted of severity level 7 and 9 felony offenses. In this finding of fact, the Board stated that Wright did this in an attempt to emphasize that the crimes he committed were not the most serious. Wright argues he made a mistake, and he pointed out his mistake in his petition for review, stating in a footnote that he had incorrectly indicated the least severe felony was severity level 9 when Kansas actually recognizes 10 severity levels of felonies. To us, he argues the Board's finding is ludicrous and contends the district court's acceptance of the same is "puzzling." Nonetheless, the record shows Wright made the statement, and there is no doubt that Wright was trained in the law and his statement was wrong. Despite his attempts to minimize it as an honest mistake, one can see that doubts could reasonably arise in members of a Board hearing

his plea that the statement was a mistake from someone convicted of perjury.

Next, in paragraph 12, the Board took issue with Wright's statements that his felonious conduct was not that serious and that none of the victims were damaged or harmed as a result of his conduct. The Board held the assertion was wrong because Wright failed to demonstrate any action he had taken to correct the conduct he exhibited in taking funds from clients and the Topeka Lawyer's Club or in deliberately misleading the disciplinary investigator, the president of the Topeka Lawyer's Club, or the Supreme Court's disciplinary panel. To us, Wright argues this finding is not relevant to the factors for finding him rehabilitated. He contends that he admitted this conduct and was disciplined and punished for it, he has not engaged in that conduct since he was released from prison, his employers have stated he was a trustworthy employee, and he has even paid back a bank loan that was written off as uncollectible. The record shows Wright did argue that none of his victims were harmed or damaged. The Board views things differently than Wright.

We note that in his argument on this point, Wright avoids the Board's statement that evidence of theft and perjury are very serious matters. Indeed, in his petition for review, Wright suggested that his conduct was not that serious because his victims were not damaged. As the Board aptly points out, his former profession of practicing law was damaged. And, we can find no evidence in the record of any action Wright has taken other than suffering his punishment.

Then, in paragraph 13, the Board stated that Wright's assertion the circumstances and events that existed in his life at the time of his criminal conduct no longer exist because he is no longer in a position to handle anyone's money but his own, "demonstrates a lack of recognition of the seriousness of his conduct and a misunderstanding of the reasons why his applications for licensure were denied." Wright contends this finding is speculation and conjecture. Wright criticizes the Board's lack of belief in his argument and not the findings of fact. Obviously, the Board finds the fact that Wright can no longer officially act as a fiduciary is not very

comforting if he fails to acknowledge that it is wrong to steal. After all, he is seeking to be a teacher.

We look now at Wright's complaints about the Board's conclusions. In paragraph 7, the Board stated that teachers are role models for their students and are expected to instill a respect for the law in their students, citing *Hainline v. Bond*, 250 Kan. 217, 224, 824 P.2d 959 (1992). Wright argues the Board is implying that he has not proven himself to be an appropriate role model, and he contends the evidence in the record suggests otherwise. Despite his assertions to the contrary, the Board made no statement that Wright would not be an appropriate role model. As far as we can tell, the Board states teachers are role models. A premise that is surely undeniable.

Next, in paragraph 21, the Board noted that Wright offered evidence in mitigation of his conduct and in support of his argument for rehabilitation, but it found there were aggravating factors, such as Wright's lack of remorse and failure to recognize the wrongful nature and seriousness of his conduct. The Board also noted Wright's position of public trust at the time he committed the crimes and "the gravity of his deliberate and repeated episodes of misconduct involving acts of dishonesty." Wright argues there is no requirement that an applicant for a teaching license must first show remorse, and even if there was a requirement to show it, Wright argues he has. The fact that Wright was in a position of public and private trust when he committed his crimes is undisputable.

In paragraph 22, the Board stated that Wright continued to argue his conduct was not that serious. To support this finding, the Board states that Wright argued the felonies he committed were not the most serious felonies, he paid the money back, no one got hurt, and his conduct is no longer an issue because he is not in a position to handle anyone's money. Those statements are mostly true, and yet they appear to minimize the nature and seriousness of the conduct, with the exception of the Board's finding that Wright argued that no one got hurt. Wright points out that the district court also stated: "The Board also found that [Wright] continued to portray his actions as victimless and continued to down-

play his actions as 'not that serious.' " Wright finds this conclusion offensive.

The record reveals the following statement by Wright that illustrates what he is arguing here:

"[Wright] had no criminal record and as such, he was a candidate to be sentenced to probation. However, the Shawnee County District Court Judge sentenced him to serve one year in prison followed by two years of supervised probation. Normally a theft charge includes a restitution order, but there was none in these cases as all money had been repaid to the victims even prior to the time criminal charges were filed. In fact, no victim ever suffered any damage or harm as a result of [Wright's] actions. Vera Johnson lived out her life at Brewster Place and died at age 98. Neither she, nor the members of the Topeka Lawyers Club, nor the heirs of David W. Husted ever filed any charges or complaints against [Wright]."

Apparently, Wright argues that even though he took money from his clients, the clients never ran out of money before he paid the money back. That is not comforting to the victims. But the Board also cites Wright's statement to the Commission, which is included in the administrative record, where Wright stated that he repaid all the money he used prior to the time when charges were filed against him and "[n]one of those from whom I took money ever suffered any damages or adverse consequences." It was not unreasonable for the Board to view these statements and conclude that Wright was missing the point. Wright may have eventually paid the money back, but only after he got caught after failing to pay his aunt's nursing home bills. See *Wright*, 276 Kan. at 358.

Furthermore, the Board points out another statement Wright made in his petition for review when he was discussing the criminal case based on theft allegations from the Husted estate. Wright stated: "[No] restitution was ever ordered in this case or any other case." The Board argues this statement is false because the Supreme Court ordered restitution as part of his disciplinary action. The Supreme Court determined Wright still owed Johnson $13,628.17. 276 Kan. at 371. In his reply brief, Wright explains that in all the statements where he discussed not having to pay restitution, he was only talking about the criminal cases, because he was never ordered to pay restitution as part of his criminal sen-

tences. But Wright never satisfactorily explains his statements that the people and organization from which he took money were not damaged.

Going further, we note the Board considered the fact that Wright's conduct was not youthful indiscretion—he was 54 at the time of his convictions—or a lapse in judgment of a young non-professional person. See K.A.R. 91-22-1a(g)(1)(F). And the Board found most important the nature and seriousness of the conduct that resulted in Wright's disbarment and Wright's failure to recognize the nature and seriousness of that conduct. See K.A.R. 91-22-1a(g)(1)(A). The Board also appears to have relied on the number of incidents of improper conduct. See K.A.R. 91-22-1a(g)(1)(G).

In making these findings, the Board relied on the fact that Wright engaged in deliberate and repeated acts of dishonesty over a period of years while in a position of public trust, and his license as a teacher would return him to a position of public trust. The Board also relied on Wright's statements that no one was hurt as a result of his conduct, and even if Wright believes those statements were taken out of context, it was not unreasonable for the Board to consider them to show that Wright does not appear to understand the nature and seriousness of his prior actions. Wright does not challenge the Board's conclusion that he failed to address his conduct in deliberately misleading the disciplinary investigator and disciplinary panel.

On a final note on this point, Wright contends he never said his criminal actions were "not that serious." We find no such quotation in the record. Further, the district court did not support its finding that Wright stated his crimes were "not that serious," and the Board has not provided support for that statement on appeal. It appears the Board bases this conclusion on inferences it has drawn from other things Wright has said, including the previously mentioned statements that none of the victims suffered damages.

In our view, each of the questioned findings is supported by substantial competent evidence and the conclusions of the Board are reasonable. Wright has not provided evidence showing how he has changed so that he will not breach the public trust again. After all, Wright appeared to be an upstanding member of the profes-

sional community when he breached the public trust before, and the Board's conclusion that Wright has failed to show he is fit to receive a teaching license is supported by substantial competent evidence. We see no reason to reverse on this point.

*We cannot conclude the Board was unreasonable, arbitrary, or capricious.*

In his final attack, Wright asserts the Board's decision was unreasonable, arbitrary, or capricious according to K.S.A. 77-621(c)(8). He presents this argument in two ways: first attacking the written holding of the Board and then calling into question certain public comments made by Board members near the time of the vote on his application. First, we review the law.

An agency action is arbitrary and capricious if it is unreasonable or without foundation in fact. *Chesbro v. Board of Douglas County Comm'rs,* 39 Kan. App. 2d 954, 970, 186 P.3d 829, *rev. denied* 286 Kan. 1176 (2008). A rebuttable presumption of validity attaches to all actions of an administrative agency, and the burden of proving arbitrary and capricious conduct lies with the party challenging the agency's actions. *Connelly v. Kansas Highway Patrol,* 271 Kan. 944, 965, 26 P.3d 1246, *cert. denied* 534 U.S. 1081 (2001). Our Supreme Court " ' "has defined arbitrary to mean 'without adequate determining principles . . . not done or acting according to reason or judgment'; . . . [and] capricious as 'changing apparently without regard to any laws.' [Citations omitted.]" ' " *Dillon Stores v. Board of Sedgwick County Comm'rs,* 259 Kan. 295, 299, 912 P.2d 170 (1996). We now look at the Board's written findings.

On this point, Wright contends the Board's findings and conclusions were jumbled, unconnected to the record, and legally deficient. By doing this, he hopes to show the Board acted in an arbitrary way. It is true that the Board's findings make no specific reference to the administrative record. They appear rather to be a distillation of what the Board heard and read.

Nonetheless, we cannot agree with Wright and conclude they are legally deficient. The Board's findings clearly identify the nature of its concerns and articulate the reasons for its action. Simply put, they give a history of the administrative proceeding and explain

in detail why the Board rejected Wright's application. In the past, courts have approved agency actions that were even void of specific findings of fact. See *Kansas Racing Management, Inc. v. Kansas Racing Comm'n*, 244 Kan. 343, 366, 770 P.2d 423 (1989). The actions of the Board are not arbitrary on this account.

We turn now to the statements of individual Board members. Wright focuses on Kathy Martin, Janet Waugh, Jana Shaver, and Sally Cauble. We will look at each instance and give the Board's response to Wright's claims.

Kathy Martin, a Board member who voted against granting Wright's request for a teaching license, stated prior to voting at the Board meeting, "And I'd like to tell Mr. Wright that I certainly agree that he has been rehabilitated and that I appreciate all the things that are in his fact—or all the facts that he has given us." However, Martin decided to rely on the recommendation of the "professional standard board," which is "made up of largely teachers and people who are administrators and work in higher education and all over the teacher profession. And they strongly recommend that we proceed with the Professional Practices Commission recommendation to deny Mr. Wright a teacher's license in Kansas at this time."

Another Board member, Janet Waugh, stated, "I guess I just have to say one thing that—my major concern over this is the fact that I'm not saying he's not rehabilitated. You know, there's probably—I'm confident he probably is." Waugh's "major concern" was parents. She believed some parents would be pleased to have their children taught by someone who had rehabilitated himself or herself. But she believed some parents would "object 100 percent." She then stated, "And while I agree, I think he's rehabilitated, I think this is—we have to inform parents if we don't have a highly-qualified teacher in a room. You know, but we don't [*sic*] have to inform them of this."

To us, Wright contends that according to these two Board members, he met the standard established by law, but these members chose to ignore the law. Wright contends this meets the definition of capricious, which our Supreme Court has defined as "changing, apparently without regard to any laws." *Dillon Stores*, 259 Kan.

295, Syl. ¶ 3. Wright argues that parents' and another board's recommendations are not factors the statutes say the Board should consider when deciding whether to issue a license.

In response, the Board stated that Wright has misinterpreted Waugh's comments. The Board stated Waugh was expressing a belief that Wright probably was "rehabilitated in the context of being not likely to repeat his past criminal acts," and she was simply "voicing a concern about parents' perception and potential regard for a prospective teacher . . . related to maintaining the public trust and confidence placed in members of the teaching profession."

Wright goes further and argues another Board member, Jana Shaver, said she was going to vote against licensure simply because Wright had been disbarred. Specifically, Shaver stated:

"Well, I—I have got to say that this has been one of the most difficult decisions that I've had before me because I'm very conflicted. Personally I believe in forgiveness, I believe in redemption. But professionally I believe, having taught and been an administrator for 27 years in public education, that we have to hold to the highest standards for people in our profession. And in doing that, I don't feel that we can license someone that's been denied from an—another profession.

"So for that reason—and—and Ken mentioned taking a chance. I don't believe we can take a chance with our children. So for that reason, I will not be able to support the motion."

Shaver then voted to deny Wright's request for a teaching license.

Finally, Wright argues that a statement by Sally Cauble, another Board member who voted not to grant Wright a license, proves the Board's decision was arbitrary. Before the vote on Wright's request for a license, Cauble asked Wright if he was aware when he decided to go into teaching that the "Professional Standards Committee has never approved a person in [his] situation[.]" Wright presumes the situation she was referring to is him being a convicted felon. He contends that an admission from a Board member that the panel has never recommended approval of a prior felon "is stunning, and indicates a total disregard for the law and is probably *prima facia* evidence of unreasonable, arbitrary or capricious action."

Wright contends that state law clearly allows some felons to apply for a teacher's license. See K.S.A. 2008 Supp. 72-1397; K.A.R. 91-22-1a. And he claims any person appearing before a state agency has the right to expect that his or her request will be decided fairly, independently, and with due regard for the law. It was the Board that said in its additional findings and conclusions on remand that it relied on K.S.A. 72-8501 and treated this as if it were a request for reinstatement of a license. Yet, at least in their comments prior to voting, the Board members did not rely on factors in this regulation.

In response to Wright's argument on this issue, the Board contends it has the right and responsibility to ensure that each person granted a teaching license is fit to be a member of the profession, and it treats everyone with Wright's background and circumstances alike. The Board argues it always views felonious conduct with concern, especially conduct involving dishonesty, so its decision was not unreasonable, arbitrary, or capricious.

Frankly, all of these individual comments appear to be the public musings of Board members grappling with an important decision. They are simply the expressions of individuals having to make a vote. Collectively, their reasoning is contained in the written findings and conclusions of the Board, and that is the agency action which is under consideration, not the individual statements of those on the Board. Indeed, in its written decision, the Board applied the law and supported its decision by substantial competent evidence. Therefore, this court cannot say the Board's decision was unreasonable, arbitrary, or capricious.

*Conclusion.*

We understand the frustration that Wright expresses. After all, from his point of view, what can he do? He has served his prison sentence, he has paid his restitution, and he has taken additional training to become a teacher and no one disputes that he has the academic qualifications to teach. Furthermore, he has received the recommendation of many reputable people. Yet the Board that is charged by law to license teachers has denied his application.

From the Board's point of view, it holds the legal responsibility to ensure the competence and fitness of every applicant to teach. In its view, Wright engaged in deliberate and repeated acts of dishonesty over a number of years while in a position of public trust and it is now loathe to give him another chance to fill another position of public trust, this time as a teacher. The Board finds it significant that Wright has not applied to the Kansas Supreme Court for the reinstatement of his law license.

In the end, if the Board has followed the rules, it is the judgment of the State Board of Education that matters when deciding who is fit to teach in Kansas, and not the courts. That is the public trust placed on the Board. We agree with the district court that the Board has followed the rules in this case. We will not substitute our view for that of the Board.

Affirmed.

\* \* \*

ATCHESON, J., concurring: I concur in the judgment affirming the decision of the Shawnee County District Court that, in turn, upheld the administrative ruling of the Kansas Board of Education more than 2 years ago to deny a teaching license to Douglas S. Wright based on the aggravated circumstances of the conduct that led to his imprisonment for perjury and felony theft and to his disbarment. I do so reluctantly and largely because of the limited role the courts play in reviewing decisions of administrative bodies. In many respects, the Board supports its determination with factual distortions, specious legal interpretation, and lofty sounding rhetoric signifying little of substance. But shorn of those deficiencies, the decision still contains enough to support the denial given the statutory and regulatory standards governing teacher licensure and the decidedly deferential judicial review of administrative actions.

The majority opinion sets forth the facts and the law in detail, and I do not intend to repeat that discussion. Nor will I dissect the inadequacies of the Board's written findings and conclusions. That exercise would considerably extend my comments to no particularly worthwhile end. I do, however, offer some examples.

A short version of the facts helps outline why the Board's decision must be affirmed. While practicing law in Topeka, Wright repeatedly took money from the checking account of his great aunt without her permission and for his own use. He had agreed to manage her financial affairs because she was no longer competent to do so. Wright undertook that task without charging a fee for his services, although a lawyer customarily might, especially for a non-familial client. An investigation showed that Wright had improperly taken money from the account 43 times during a 4-year period beginning in 1998. The total amount was just over $86,000. The investigation also showed that Wright had repaid about $57,000 in 1998 and 1999. *In re Wright*, 276 Kan. 357, 358-61, 76 P.3d 1018 (2003). Nonetheless, Wright's actions amounted to felony theft. Wright also took more than $12,000 from an estate without authorization—also felony theft. In 2001, Wright served as the secretary-treasurer of the Topeka Lawyers Club, a social organization. He took $3,000 from the club's treasury without authorization in late 2001. The club's president became aware money was missing, confronted Wright about the shortfall, and Wright repaid the organization in 2002. 276 Kan. at 361-62. The Kansas Disciplinary Administrator began investigating Wright's conduct for possible violations of the Kansas Code of Professional Responsibility governing lawyers licensed to practice in this state. In the course of that investigation, Wright made false statements under oath amounting to criminal perjury.

In July 2003, Wright pled guilty to and was convicted of four counts of felony theft and one count of perjury in Shawnee County District Court. He was sentenced to 1 year in prison and was released after serving about 10 months. The district court released Wright from supervision in January 2006. And the convictions have since been expunged. In September 2003, the Kansas Supreme Court revoked Wright's license to practice law because he had taken money that didn't belong to him and had lied about his actions. 276 Kan. at 371. With that background, I turn to the Board's authority to license teachers.

As permitted by K.S.A. 2008 Supp. 72-1388, the Board has adopted an administrative rule regulating the issuance, suspension,

and revocation of teaching licenses. K.A.R. 91-22-1a. That regulation controls Wright's application for a license. The Board may deny a license to an applicant based on "misconduct or other just cause." K.A.R. 91-22-1a(a) (stating grounds for suspending, revoking, or publicly censuring a license holder); K.A.R. 91-22-1a(b) (Board may deny a license for the reasons in subsection [a]). The regulation outlines specific circumstances amounting to misconduct or just cause including conviction of any felony or particular misdemeanors and certain described noncriminal conduct. K.A.R. 91-22-1a(a).

None of the enumerated examples applies to Wright, but the list is not exclusive. The ground for felony convictions does not apply to Wright because the Shawnee County District Court expunged his convictions during the course of the administrative proceedings. Under K.S.A. 2008 Supp. 21-4619(f), an order of expungement requires that the party "shall be treated as not having been . . . convicted . . . of the crime" subject to certain listed exceptions. The exceptions include applications for law licenses, jobs in the gaming industry, and law enforcement positions. In crafting the exceptions, the legislature carefully surveyed various professions and fields to determine those requiring consideration of criminal convictions notwithstanding expungement. Neither application for a teaching license nor employment as a teacher is among the exceptions in K.S.A. 2008 Supp. 21-4619(f)(2) (A-K). The Board, therefore, could not consider Wright's expunged felony convictions to be disqualifying in and of themselves. In other words, the fact of conviction could not be used to deny Wright a teaching license because that would be inconsistent with treating him as if he had not been convicted and, thus, would be contrary to the expungement statute.

But the Board contends the factual circumstances giving rise to the criminal charges against Wright and prompting his disbarment may be considered to the extent they constitute misconduct or just cause under K.A.R. 91-22-1a independent of the convictions. The language of the regulation supports the Board's position in that some of the listed bases for denying a license do not entail criminal convictions. In short, a felony or other criminal conviction is not a

necessary condition for denial of a license under K.A.R. 91-22-1a. And bad behavior amounting to misconduct or just cause may be considered regardless of any resulting criminal conviction or the later expungement of that conviction.

As provided in K.A.R. 91-22-1a(g), the Board may reconsider the denial or revocation of a license upon the applicant's showing that he or she has been rehabilitated. The regulation provides: "The evidence shall demonstrate that the grounds for the denial or revocation have ceased to be a factor in the fitness of the person seeking licensure." K.A.R. 91-22-1a(g). And it lists eight considerations for making that determination: (1) "the nature and seriousness" of the applicant's improper conduct; (2) the extent the applicant would have "opportunity to engage in conduct of a similar type" if the Board granted a license; (3) "the present fitness of the applicant to be a member of the [teaching] profession"; (4) the applicant's behavior following the license denial or revocation; (5) the length of time since the denial or revocation; (6) the age and maturity of the applicant when he or she engaged in the improper conduct; (7) "the number of incidents of improper conduct"; and (8) the applicant's discharge from probation or receipt of a pardon or an order of expungement of any conviction. The Board evaluated Wright's application under subsection (g) although he had not been licensed as a teacher. Wright applied well after the wrongful conduct creating the impediment to his licensure, making his circumstances comparable to someone who had lost or been denied a license and then sought reconsideration under that subsection. The Board's approach in that regard seems reasonable.

Throughout its written findings, the Board emphasized the seriousness of the misconduct based on the repeated instances of theft over an extended period coupled with Wright's lying under oath to minimize certain aspects of that behavior. And that is a valid point. The crimes entailed chronic dishonesty, notwithstanding mitigating factors such as Wright's repayment of some of the stolen money during the course of the conduct and his considerable efforts at rehabilitation since. The misconduct is qualitatively more serious than a single felony shoplifting conviction for stealing a computer worth $1,050. See K.S.A. 21-3701(b)(3) (theft of prop-

erty worth more than $1,000 classified as a felony). But the Board largely fails to tie those concerns to specific, comprehensible reasons Wright should be denied a license or—in the words of the regulation—to his "fitness" to be licensed.

Wright has indicated he would plan to teach government, civics, or related subjects at the secondary school level. Nobody questions his technical competence in the classroom. By all accounts, Wright would ably impart knowledge to and stimulate the thinking of the students in his charge. The Board specifically found: "The Applicant's competence to teach is not an issue in this matter." But there is more to teaching than classroom performance. Especially among college-bound secondary-school students, grades and recommendations become important considerations. Teachers necessarily must fulfill those ancillary duties honestly and with integrity. Wright's background could be problematic in that regard. Although Wright suggests that as a teacher he would not function as a fiduciary with access to large amounts of money as he did in his law practice, teachers commonly act as advisors to student groups and organizations that often engage in fundraising activities. The amount of money involved in those situations almost certainly would be less; Wright's misconduct might still be of concern. And teachers presumably deal with expense reimbursements or other uses of district funds from time to time. Again, Wright's misconduct might be troublesome there. All of those considerations are peripheral to the classroom abilities of a teacher, but they figure in the duties of the job. The Board, however, never identified particularized considerations of that sort linked to its stated concern about the magnitude of Wright's misconduct.

In his thorough opinion, Judge Hill sets forth at length the judicial standard for reviewing administrative actions under K.S.A. 77-621. The standard is especially deferential to the administrative determination. Given that deference, I am constrained to agree that this court must affirm the Board's decision to deny Wright a license. But the Board's decisionmaking comes perilously close to being legally deficient notwithstanding the laxity of K.S.A. 77-621.

The record evidence and the Supreme Court's findings in the disbarment proceeding against Wright (of which the Board and

this court may take notice) provide substantial factual support for the conclusion that the misconduct here was unusually severe both in breadth and duration. In turn, those facts and that conclusion are sufficient to warrant the Board's determination to deny Wright a license in 2009, barely 3 years after his release from court supervision—the Board's ultimate decision in this matter. That ultimate decision also comports with the criteria laid out in K.A.R. 91-22-1a. Based on what is before us, the pivotal facts establishing Wright's misconduct are supported in the evidence. The Board applied the controlling law. And given the comparative gravity of the misconduct and the brevity of the time following Wright's exit from the criminal justice process, the ultimate decision cannot be characterized as unreasonable, arbitrary, or capricious.

The Supreme Court's decision in *Hainline v. Bond,* 250 Kan. 217, 218-21, 824 P.2d 959 (1992), loosely supports the Board. In that case, the Supreme Court applied a predecessor regulation to uphold a 140-day suspension of a teacher on grounds of "immorality" after he was placed on diversion for burglary and theft and, thus, avoided criminal conviction. In short, the Board's denial of Wright's license request survives review under K.S.A. 77-621 and must be upheld.

Almost conspicuously absent from the record is any evidence of how the Board has treated similarly situated applicants for teaching licenses. Maybe there aren't any. If, however, the Board had granted licenses to arguably comparable candidates, the decision here would have a look of arbitrariness.

Assuming Wright has continued his unblemished postrelease behavior and he were to reapply for a license next year, the Board would have to offer a less tenuous connection between the facts and a license denial. Indeed, in 2009, the Board itself noted Wright's "repeated acts of dishonesty" while a lawyer "demonstrate[d] a lack of fitness to engage in the profession of teaching and is sufficient and just cause for denying his application for licensure *at this time.*" (Emphasis added.) Depending upon Wright's circumstances 3 years later and a decade removed from the misconduct itself, that rationale would be far more difficult to justify.

As I have noted, much of the Board's intermediate reasoning navigating from the facts of Wright's misconduct to the ultimate determination it reached in 2009 was slipshod, impertinent, or erroneous. Those positions could not sustain the Board's conclusion then and only erode with the passage of time. Illustrative of the specious arguments:

• The Board castigates Wright for saying the convictions for severity level 7 felony thefts, severity level 9 felony thefts, and severity level 9 felony perjury are not that serious. All are nonperson felonies. And by classification in the Kansas Criminal Code, they are, in fact, among the lowest grade felonies. The Board harped on Wright's error in suggesting the Code establishes 9 felony levels for nondrug crimes when there actually are 10; it characterized what appears to be a simple misstatement as a deliberate and calculated effort to lie about the seriousness of the crimes. The Board repeatedly refers to the criminal prosecution of Wright and the disbarment proceedings against him as if they entail different conduct when they pertain to the same events. The Board disputes Wright's suggestion that he voluntarily paid full restitution to the victims of the thefts. It referred to the Supreme Court's order in the disbarment proceeding that Wright should pay his great aunt an additional $13,628 without pointing out that nearly $11,000 of that amount reflected interest the court determined should be included in a make-whole remedy and the balance entailed a small amount for overdraft charges and what appeared to be an accounting error as to the loss. See *In re Wright*, 276 Kan. at 371.

• The Board also relied on K.S.A. 2008 Supp. 72-1397 in denying Wright a license. The applicability of that statute is, at best, debatable. The statute precludes the Board from issuing or renewing licenses to persons convicted of certain crimes. K.S.A. 2008 Supp. 72-1397(a). But the Board may do so for persons convicted of other crimes, including theft and perjury, if they have been "rehabilitated." K.S.A. 2008 Supp. 72-1397(b), (c). Even if the Board finds an individual to be rehabilitated, it appears to have the authority to deny a license based on factors quite similar to those outlined in K.A.R. 91-22-1a(g). Because Wright's convictions were expunged during the administrative hearing process, K.S.A. 2008

Supp. 72-1397 would seem to be inapplicable and, thus, inapposite as justifying a denial of a license.

But one of the factors the Board may consider is "discharge from probation, pardon or expungement." K.S.A. 2008 Supp. 72-1397(c)(6). Inclusion of the word "expungement" could be read as allowing the Board to ignore the comprehensive procedures for and legal effects of expungement laid out in K.S.A. 2008 Supp. 21-4619(f). But it seems unlikely to me that the legislature meant to craft such an exception to the expungement statute by including a single word among others in a list of factors in an unrelated statute. Had the legislature meant to include teaching as one of the fields in which otherwise expunged convictions could be considered in hiring or retention decisions, it would have identified teaching in the comprehensive listing of such jobs in K.S.A. 2008 Supp. 21-4619(f)(2) (A-K). See *Randall v. Loftsgaarden*, 478 U.S. 647, 661, 106 S. Ct. 3143, 92 L. Ed. 2d 525 (1986) (noting " ' "a cardinal principle of statutory construction that repeals by implication are not favored" ' "); *Hainline*, 250 Kan. at 220. (Both K.S.A. 2008 Supp. 72-1397 and K.S.A. 2008 Supp. 21-4619 or their predecessors have been frequently amended and were amended in the last legislative session largely negating any argument one should control as the more recent enactment.).

● The Board repeatedly cited K.S.A. 72-8501 to support its decision. The statute provides:

"It is the intent and purpose of the legislature that the practice of teaching and its related services, including school administration and supervisory services, shall be designated as professional services. Teaching and school administration are hereby declared to be professions in Kansas with all the similar rights, responsibilities, and privileges accorded other legally recognized professions." K.S.A. 72-8501.

The statute is precatory: it conveys a sentiment but neither creates particular rights nor imposes specific duties. As such, the statute provides no legal support for Board action generally or in this case particularly. The Kansas appellate courts have cited the measure exactly twice in 40 years. The *Hainline* court quoted the statute but never explained it or integrated it into the decision in that case. *Hainline*, 250 Kan. at 224. The Supreme Court *rejected* K.S.A. 72-

8501 as a basis for imposing a legal duty on educators in a particular district to exercise due care commensurate with that of their counterparts in other districts in obtaining insurance coverage for students participating in school-sponsored activities. *Wicina v. Strecker*, 242 Kan. 278, 283-84, 747 P.2d 167 (1987).

But the Board's frequent invocation of K.S.A. 72-8501 underlies a theme running throughout its decision—granting a license to Wright, as a convicted felon and a disbarred lawyer, would demean the teaching profession. The Board explicitly articulated that theme in adopting the conclusion of the Professional Practices Commission's Initial Order of March 14, 2009, recognizing that "teaching and school administration are professions in their own right" and "they are not professions by default or a safety-net [*sic*] for persons who have been barred from other professions for professional misconduct." In other words, the Board intended to deny Wright a teaching license, in part, simply because he had been stripped of a professional license in another field regardless of the underlying reason. The Board declared that someone unable to hold a law license automatically must be unfit to be a teacher and any other rule would be insulting to teachers. The insulting part might or might not be correct. But it is not a legally recognized ground in K.S.A. 2008 Supp. 72-1397 or K.A.R. 91-22-1a for denying an applicant a teaching license. And it reflects an improper consideration.

• In its decision, the Board cites deficiencies in Wright's rehabilitative efforts without offering any meaningful criteria for curing those shortcomings. Essentially, the Board members have said to Wright: What you have done thus far is unsatisfactory, but we have no intention of telling you what will satisfy us. The Board has granted itself a roving commission—authority exercised without defined limitations or standards—to keep Wright from obtaining a license. See *Interstate Circuit v. Dallas*, 390 U.S. 676, 688, 88 S. Ct. 1298, 20 L. Ed. 2d 225 (1968) (An ordinance restricting the age of persons admitted to motion pictures based on an official's determination whether the film's content is " 'desirable, acceptable or proper' " impermissibly creates " 'nothing less than a roving commission . . . .' "); *School District v. Community High School*,

146 Kan. 380, 384, 69 P.2d 1102 (1937) (A statute that defines "the authority" and the "ambit of [the] duties" of a public official "is not a roving commission but a directed course of action."). Government authority should not be exercised through roving commissions, especially as part of an adjudicative or administrative hearing process.

In 2009, the Board found just cause to deny Wright a license "at this time," but it has nowhere indicated what Wright can or should do to make his application acceptable at some later time. The Board repeatedly stated that Wright's misconduct "violates the public trust" without explaining the contours of that trust or how Wright might purge himself of that violation. According to the Board, teachers and all other state-licensed occupations hold a public trust. See, e.g., K.S.A. 2-2449(a) (persons may lose or be denied licenses in Kansas to apply pesticides if convicted of a felony unless sufficiently rehabilitated to warrant the public trust); K.S.A. 2008 Supp. 2-2512(a)(1) (same, licensed egg sellers); K.S.A. 2008 Supp. 65-1908(a)(4) (same, licensed cosmetologists); K.S.A. 2008 Supp. 65-1947(a)(2) (same, licensed tattoo artists). The term "public trust" is not, however, one of art or well-defined meaning. It is often what candidates for office, Fourth-of-July speakers, and social studies teachers chose it to mean. See In re Shumway, 269 Kan. 796, 808, 8 P.3d 735 (2000) ("Misappropriating client funds is one the gravest offenses against the public trust a lawyer can commit."); but see Martin v. Davis, 187 Kan. 473, 479, 357 P.2d 782 (1960) ("While they [lawyers] do not hold an office or public trust in a constitutional or statutory sense, they are, because of their close intimate relationship to the courts, an important part of the judicial system and are 'officers of the court.' "). The Board has not provided any guidance to Wright on that score. The Board also criticized Wright for "failing to demonstrate any action he has taken to correct his conduct" in making false statements resulting in the perjury conviction. But the Board favors Wright with no indication of what he ought to do. The perjury amounted to a victimless crime in the sense that no particular individual (besides Wright himself) was directly harmed by the false statements he made under oath. Unlike the thefts for which Wright could and did repay the victims,

the perjury violation offers no readily apparent means of correction or avenue for redemption.

With those findings, the Board has constructed a challenge for Wright to meet to attain a license. But the Board has failed to share its definition or criteria for determining his success. The Board has slyly created a game without discernible rules, and such a game can never be won.